## APPEAL OF E. J. GALLAGHER REALTY CO.

Docket No. 6726.    Submitted March 11, 1926.    Decided June 25, 1926.

1. Amounts paid out of earnings by a corporation as premiums on the lives of its officers in excess of that part of premiums which is applicable to pure term insurance, should be included in invested capital as earned surplus.

2. *Held*, under the evidence, that the taxpayer being on the accrual basis, received taxable gain in 1920 and 1921 from the sale of houses when it permitted the building and loan association to hold as security a portion of the purchase price which it received as payments were made to the building and loan association.

*Abram R. Serven, Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the Commissioner.

### Before GRAUPNER [1] and TRAMMELL.

This appeal involves deficiencies in income and profits taxes of $3,025.82 for the year 1919, $13,437.49 for the year 1920, and $279.97 for the year 1921, aggregating $16,743.28. The errors alleged are (1) that the Commissioner refused to include in invested capital for 1919 and 1920 the cost of life insurance policies on the lives of its officers, instead of the cash surrender value; and (2) that he included in income for 1920 and 1921 certain amounts set up on the books as " Hypothecated unearned income," representing amounts retained by certain building and loan associations as further security for mortgages placed on buildings erected and sold by the taxpayer.

#### FINDINGS OF FACT.

1. The taxpayer is a Maryland corporation, engaged in the business of building and selling residences, with its principal office at Baltimore.

---

[1] This decision was prepared during Mr. Graupner's term of office.

2. In 1916 the taxpayer took out an insurance policy on the life of its president, with itself as beneficiary, and paid premiums thereon in the aggregate amount of $3,207.75 to December 31, 1918. The cash surrender value of the policy at that time was $1,550. During 1919 it took out insurance on the lives of other officers, including the president, and paid out in premiums thereon the total amount of $6,450.50 to December 31, 1919. The cash surrender value of said policies at that time was $2,220. The Commissioner excluded from the invested capital for 1919 and 1920 the cost of the policies and included only the cash surrender value.

3. During the years involved in this appeal the taxpayer built and sold a number of houses. Its practice was to sell them for a small initial payment and finance the balance by mortgages given by the purchaser to building and loan associations. Such mortgages were for amounts in excess of those for which the building and loan associations loaned on similar property and, to protect themselves, the associations withheld such excess and required the taxpayer to execute bonds as security therefor.

4. A typical bond executed by the taxpayer as security for this balance not paid over by the building and loan association is as follows:

Know all men by these presents, that E. J. Gallagher Realty Co. of Baltimore City, a body corporate of the State of Maryland, doth hereby assign and transfer unto the Sterling Permanent Savings and Loan Association of Baltimore City, a body corporate of the State of Maryland (hereinafter termed association) one thousand dollars, the amount deposited this 29th day of January, 1921, by it with the said association.

This assignment is made as collateral security for the payment of a mortgage loan of fifty hundred and seventy dollars, made this day by the said association to Henry P. McGinn and Blanche M. McGinn, his wife (hereinafter termed mortgagors), on property in Baltimore City, now known as No. 3101 Ravenwood Avenue as by reference to said mortgage will more fully appear.

The payment by the said mortgagors to the said association of the sum of one thousand dollars, and all interest due by said mortgagors to the said association on account of said loan, and all ground rent, water rent, taxes, and other public charges on said property and all losses, charges, and expenses incurred in the foreclosure of said mortgage (should that be necessary before this bond is released) will render this assignment null and void; but otherwise the same is to remain in full force and effect.

It is agreed and understood, however, that no failure upon the part of said association to take prompt advantage of any of its rights under the mortgage securing said loan, and no failure to notify it of any delinquency by said mortgagors in the payment of said dues, interest and expenses shall in anywise affect the liability of the fund hypothecated as hereinbefore set forth.

5. During 1920 there was retained by building and loan associations, on account of sales made during 1920, $34,879. For 1921, the amount so retained by building associations was $19,388. The tax-

payer entered these amounts under an account entitled " Hypothe- cated unearned income." The taxpayer kept its books on the accrual basis.

6. In computing its income for 1920 and 1921, the taxpayer did not include the said amounts of $34,879 and $19,388, respectively, or any part thereof. The Commissioner restored these amounts to in- come and increased the tax liability accordingly.

## OPINION.

TRAMMELL: There are two questions presented in this appeal. (1) Whether the amount of premiums paid on life insurance policies taken out by the taxpayer on the lives of its officers may be included in invested capital; and (2) whether the so-called " hypothecated profits not yet earned " are income.

The Commissioner has allowed in the taxpayer's invested capital the cash surrender value of the life insurance policies taken out on the lives of its officers as of the beginning of each taxable year. The taxpayer contends that the entire amount of premiums paid on such policies should be included in invested capital as the pur- chase price of an asset.

The statute provides that earned surplus shall be included in invested capital. However, it does not follow that the entire amount paid out each year as premiums on life insurance policies should be included in invested capital. A portion of such premiums is for current insurance during each of the years for which the payment is made and is not applicable to an asset having a life in excess of the year for which the payment is made. The capital value of the policy is not increased by the payment of that portion of the pre- mium which is allocated to current earned insurance. It is only the amount of payments made each year to acquire or increase the capital investment which can be included in earned surplus. See *Appeal of E. A. Armstrong*, 1 B. T. A. 296. The earned surplus, with respect to the insurance policies, is the excess of the amount of premiums paid each year over the current annual insurance. In the absence of evidence that the cash surrender value represented anything other than the payments in excess of the current annual insurance, the determination by the Commissioner that the amount of the cash surrender value should be included in computing invested capital is approved.

With respect to the second question, an illustration of the condi- tions surrounding a sale will give a better understanding of the problems before us.

The method employed by the taxpayer in disposing of the houses constructed by it was as follows:

The taxpayer would sell a house for $4,000 and require an initial payment of $500. Arrangements were made whereby the purchaser would give a mortgage to a building and loan association for $3,500. As the association did not consider the property adequate security for more than $2,500, it would pay over to the taxpayer only $2,500 and retain $1,000 until the purchaser had paid to it that amount in monthly payments; then it would pay over to the taxpayer the $1,000. The taxpayer was required by the building association to give its bond, in the form set forth in the fourth finding, as collateral security for this sum. The execution of the deed to the purchaser, the mortgage by the purchaser to the building and loan association, and the bond by the taxpayer to the building and loan association were simultaneous transactions.

The Commissioner treated a transaction as completed with a realization of gain at the time of each sale. If we should be governed by the form of the transaction, the taxpayer received the entire cash payment for each house sold. It received $500 cash on a $4,000 house. The purchaser then placed a $3,500 mortgage with a building association, received the cash and paid the taxpayer in full. The taxpayer gave a deed to the purchaser. As a next step, however, which was simultaneous with the above transaction, the taxpayer assigned and transferred $1,000 of the money back to the building association as further security of the mortgage given by the purchaser. This is illustrated by the contract of the taxpayer with the building association, set out in the fourth finding. Looking, however, through the form to the substance, the taxpayer did not in substance receive the $1,000. This $1,000 is retained by the building association until the purchaser pays at least that amount on the mortgage. Out of the transaction the taxpayer does, in fact, receive in cash as much as $3,000 on the sale of the $4,000 house and the balance of $1,000 is retained by the building association. With respect to that $1,000 the building association merely acts as a collecting agent for the taxpayer and it is paid to the taxpayer out of the first money received in settlement of the mortgage. There is no question here of an installment sale. The taxpayer receives in cash as much as three-fourths of the purchase price of each house. If it receives the remaining $1,000 in installment payments, such a transaction does not come within the provisions of section 1208 of the Revenue Act of 1926 with respect to installment sales.

In view of the foregoing, we are of the opinion that, since the taxpayer was on the accrual basis, the action of the Commissioner in including in the taxpayer's income $34,879 for 1920, and $19,388 for 1921, on account of such transactions, was correct. The fact that a portion of the purchase price for the property was assigned or left in the hands of the building association to insure mortgage pay-

ments by the purchaser and that the actual payment to the taxpayer was deferred does not, in our opinion, justify the taxpayer in excluding these amounts from income when it kept its books on the accrual basis.

> *The deficiencies are: $3,025.82 for 1919; $13,437.49 for 1920; and $279.97 for 1921. Order of redetermination will be entered accordingly.*

SMITH, STERNHAGEN, GREEN, AND MORRIS concur in the result only.