## APPEAL OF OWEN-AMES-KIMBALL CO.

Docket No. 1637.    Promulgated December 23, 1926.

1. The income from long-term contracts taken on the bases of lump sums, cost plus a fixed fee or plus a percentage, and cost plus a fixed fee with a guarantee that the total price was not to exceed a certain sum, is properly accruable during the period of construction in the same ratio that the work completed in each year bears to the whole.

2. Where such income is accrued at intervals having no regard for a uniform method or an apportioned ratio and the return is made in accordance with such accruals, the application of the accrual system is faulty and the return does not correctly reflect income.

*Harry Friedman, Esq.*, and *J. Robert Sherrod, Esq.*, for the petitioner.

*Ward Loveless, Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1917 and 1918, in the amounts of $474.84 and $3,528.43 respectively, a total of $4,003.27. Of the four issues set out in the petition, two have been withdrawn by the petitioner, while the Commissioner admits error in respect of another, leaving only the issue as to the proper method of computing petitioner's income from construction operations under long-term contracts.

### FINDINGS OF FACT.

Petitioner, a Michigan corporation, with its principal office at Grand Rapids, was organized in 1909 under the name of Hauser-Owen-Ames Co., its name having been changed in 1918 to Owen-Ames-Kimball Co. Its business is that of a contractor engaged in building and construction work.

During the years 1917 and 1918, petitioner was engaged in building and construction work under approximately 83 contracts. These contracts were of four kinds which, when classified according to the terms of compensation, are as follows:

(1) Cost plus a fee representing a percentage of the cost of labor, materials, and expense entering into the work;

(2) Cost plus a fixed fee;

(3) Cost plus a fixed fee, with a guarantee that the total price shall not exceed a certain amount; and

(4) Lump-sum contracts.

Of the 83 contracts referred to above, there were 13 under which the petitioner commenced work in one taxable year and completed the work in another taxable year. These 13 contracts, briefly described, are as follows:

(1) *Ashton Building Contract.*—This was an oral agreement under which the petitioner was to receive, as its compensation, 10 per cent of the cost of labor and material entering into the work. There was no agreement as to the time the petitioner was to receive its compensation.

(2) *Clipper Belt Lacer Co.*—This contract provided for the wrecking of an old garage and the erection of an addition to the owner's

plant for actual cost of labor and material, plus a commission equal to 10 per cent of the cost of all labor and material entering into the construction of the building. There was no agreement as to the time the petitioner was to receive its compensation.

(3) *Duplex Truck Co.*—This contract, dated June 1, 1917, provided for the construction of a factory for the actual cost of all labor and material, plus a fee of $10,000. Payments were to be made on or before the tenth of every month for the actual cost of all material purchased and labor paid for, the final payment, which was to include the fee of $10,000, to be made within thirty days from completion of the contract. Work was completed under this contract prior to the close of the year 1917. After the contract was completed, additional work was done for the owner, under an oral agreement, for which the petitioner was to receive an additional fee of $1,000. No date for the payment of this additional fee was fixed. The additional work extended into the year 1918.

(4) *Grand Rapids Furniture Co.*—This contract, dated September 12, 1916, provided for. the erection of an addition to a factory for the actual cost of labor and material plus a fee of $2,000, the total cost, including the $2,000, not to exceed the sum of $20,000. No dates of payment are specified in the contract.

(5) *Grand Rapids Plaster Co.*—Work was done for this company under a verbal agreement, on the basis of cost of labor and materials plus 12½ per cent of such cost.

(6) *Globe Knitting Mills.*—The work for this company was done under two contracts, one dated May 25, 1916, and the other dated July 10, 1916. The contract dated May 25, 1916, provided for the erection of foundations for a factory building for actual cost of labor and material, plus a commission equal to 8 per cent of the cost of all labor and material entering into the construction work. Payments were to be made on the first of each month, or oftener, equal to the net cost of labor and materials incurred since the next previous payment. Final payment, consisting of any part of the net cost remaining unpaid and the commission of 8 per cent on the total net cost, was to be made within thirty days after completion and acceptance of the work.

The contract dated July 10, 1916, provided for the erection of a factory building for the actual cost of all labor, material and expense incurred incident to the fulfillment of the contract, plus a commission equal to 8 per cent of said cost. Payments were to be made on the first of each month, or oftener, equal to the net cost of labor and materials incurred since the next previous payment. Final payment, consisting of any part of the cost remaining unpaid and the commission of 8 per cent of the total net cost, was to be made within thirty

days after completion and acceptance of the work. Work was to be completed on or before December 1, 1916, and, in the event of failure to complete the work within the time specified, contractor to pay liquidated damages of $20 per day.

(7) *Gardella Contract.*—This was a contract for the erection of a building for the lump sum of $32,500. The contract was completed prior to the close of the year 1917. The contract did not specify how the contract price was to be paid.

(8) *Nelson-Matter Furniture Co.*—Contract for the construction of a factory building, boiler house, and dry kilns. The contract provided that the petitioner shall receive the net cost of all labor performed and material furnished and expense incurred incident to the fulfillment of the contract and, in addition thereto, the sum of $6,000. Payments were to be made on the first of each month, or oftener, equal to the net cost of labor, material and expense incurred since the next previous payment. Final payment, consisting of any part of the net cost remaining unpaid and the commission of $6,000, was to be made within thirty days after completion and acceptance of the work. The work under this contract was completed prior to the close of the year 1916. The contract did not provide for extras. Additional work was done for the owners on the basis of cost of all labor and material, plus a commission of 10 per cent. Owing to financial difficulties of the owner, the petitioner reduced the commission on this additional work to $2,000. There was no agreement as to the date the commission on the additional work was to be paid.

(9) *Overland Garage Contract.*—Contract for the erection of a service building. The petitioner received the total cost of all labor and material entering into the construction of the building, plus a commission equal to 10 per cent of such cost. The contract provided that the total cost, including petitioner's commission, should not exceed the sum of $63,000. The contract was completed in December, 1917.

(10) *Pere Marquette Railroad Co.*—Contract for the erection of a car shed on the basis of cost, plus a commission equal to 10 per cent of cost. The contract provided that payments were to be made on the fifteenth day of each month while the work was in progress for all labor and materials furnished during the next preceding month; final settlement to be made within thirty days after completion and acceptance of the work.

(11) *W. K. Prudden & Co.*—Contract for the erection of a factory building for the actual cost of all labor and material, plus a commission equal to 2 per cent of such cost. No dates of payment are specified in the contract.

(12) *Paul Stekatee Realty Co.*—Contract provided for the erection of a department store building, at a cost of all labor and material entering into the construction, plus a commission of $10,000, the total cost, including commission, not to exceed the sum of $109,-726. Payments to be made at intervals sufficiently frequent to permit the petitioner to discount all discountable bills. Final payment, consisting of any part of the cost remaining unpaid, plus commission, to be made within thirty days after completion and acceptance of the work.

(13) *D. E. Waters Garage.*—Contract for the construction of a garage on the basis of cost of all labor and material furnished, plus a commission equal to 10 per cent of such cost. The agreement was verbal. There was no agreement as to the date of payment.

The petitioner's books of account were maintained upon the accrual basis but were faulty in their inconsistent application of the accrual basis. In the system of accounts there was no uniform method of accruing income from long-term contracts. Without regard for the terms of the contracts, as to the time and manner of compensation, income from some of these contracts was accrued on the books of account at the time of commencement of work; income from other contracts was accrued on the books at irregular intervals without any definite basis; and income from still other contracts was accrued only upon completion of the entire work.

The original returns filed by the petitioner for the taxable years 1917 and 1918 were prepared in accordance with its books of account. Subsequently the petitioner filed amended returns of net income for the years 1917 and 1918, in which gross income from long-term contracts was computed as follows: The gross income derived from contracts in which the compensation was fixed at the actual cost of all labor and material, plus a commission equal to a fixed percentage of such cost, was determined by applying to the total expenditures for labor and material made within each year the rate per cent of the commission provided for in the contracts; and the gross income from all other contracts, cost plus a fixed fee, cost plus a fixed fee with a guarantee as to the maximum amount, and lump-sum contracts, was determined by applying to the amount of the fee, in the case of contracts of the two classes first mentioned, or to the amount of the actual profit in the case of lump-sum contracts, the percentage which the total expenditures for labor and material made in each year were of the total actual expenditures under the several contracts. In this manner the gross income under each contract was computed separately. Only in the case of the 13 contracts, hereinbefore described, did the gross income as computed in the amended

returns differ from that shown by the books of account and the original returns.

The Commissioner rejected the amended returns on the grounds that the petitioner's books of account were maintained upon the completed-contract basis; and that the petitioner, having elected to maintain its books and render its returns on the completed-contract basis, could not thereafter, without his permission, change its basis of accounting for income-tax purposes to the basis upon which the amended returns were prepared, the necessary permission having neither been requested by the petitioner nor granted by the Commissioner.

OPINION.

MILLIKEN: The petitioner is engaged in building and construction work, principally under contracts. During the years involved in this appeal it was carrying on such work under approximately 83 contracts. The work under at least 13 of its contracts was begun in one taxable year and completed in another taxable year; and the income derived from these contracts, in each of the years in question, is the issue which we are called upon to decide.

Under the provisions of section 13 (d) of the Revenue Act of 1916, a taxpayer maintaining its books of account upon a basis other than that of actual receipts and disbursements, was permitted to make its return upon the basis upon which its accounts were kept, provided such basis clearly reflected its net income. Under the provisions of section 212 (b) of the Revenue Act of 1918, it was mandatory upon a taxpayer to compute its net income, for the year 1918, in accordance with the method of accounting regularly employed in keeping the books of account, if the method employed clearly reflected the net income. The petitioner filed returns for the years 1917 and 1918, in both of which it computed its net income in accordance with the method employed in keeping the books of account. The Commissioner made adjustments in the net income, as reported in the returns, disallowing certain deductions which he deemed to be unallowable and unreasonable in amount, which resulted in his determination of a deficiency in respect of both years. The petitioner does not dispute the correctness of the several adjustments made by the Commissioner. It contends, however, that any computation of net income, for the two years under consideration, based upon the method employed in keeping its books of account, must necessarily be erroneous, since the method employed did not clearly reflect its net income, and that the Commissioner erred in failing to determine the net income upon a basis which would clearly reflect what the net income was. The important question is then—Does the method employed in keeping the petitioner's books of account, during the years

involved in this appeal, clearly reflect its net income? If not, the petitioner is entitled to have its net income recomputed upon a basis which will clearly reflect its net income and to a redetermination of its tax liability upon the net income so computed.

It can not be said that any definite method was employed in keeping the petitioner's books of account. Certain it is that the manner in which the books were kept did not conform either with the cash receipts and disbursements method or the accrual method of accounting, the two alternative methods provided by statute for keeping accounts and making returns of income. *Appeal of Chatham & Phenix National Bank*, 1 B. T. A. 460; *Appeal of Henry Reubel*, 1 B. T. A. 676; *Appeal of B. B. Todd, Inc.*, 1 B. T. A. 762. All items of income and expense, other than income from long-term contracts, were entered upon petitioner's books and accounted for in accordance with the accrual method of accounting. Income from long-term contracts, an important and perhaps the chief item of income in the petitioner's business, was accounted for on petitioner's books in an entirely inconsistent manner. There existed no uniform practice as to the time and manner of accounting for income from that source. This income was accounted for at the caprice of the bookkeeper, at irregular periods, and in amounts which were not determined upon any definite or reasonable basis. At times the profit to be derived from long-term contracts was accounted for on the books when work was commenced. On other occasions it was taken up on the books of account during the progress of the work, but at times and in amounts that bore no relation thereto. And as a further variation, there were instances when the income was not accounted for until the completion of the work under contract. In the latter case, the accounting for that income was on the basis of actual receipts, notwithstanding that the expenses incident thereto were accounted for in a prior year and not deferred to be offset against the income. It is perhaps superfluous to say that it is a fundamental principle, in computing net income under the several income tax acts, that all items of income and expense shall be consistently accounted for on the same basis; and any method of accounting which fails to recognize and give effect to this principle will not clearly reflect net income. The facts as to the manner in which petitioner's books of account were kept, during the years involved in this appeal, are such that we are convinced that the method employed in keeping the accounts did not conform with either of the two alternative bases provided by statute, and did not clearly reflect petitioner's net income. It follows that any computation of net income based upon the method employed in keeping the accounts will not result in a correct determination of net income, to which

the petitioner is entitled, and resort must be made to some other method.

The petitioner asks that the income from the 13 long-term contracts described in the findings of fact, for each of the years under consideration, be redetermined upon the accrual basis, that is, by treating the income as accruing during the progress of the work under the contracts and allocating the income to the years in which it was actually earned. If the income from long-term contracts is computed in such a manner, all items of income and expense will be consistently accounted for upon the accrual basis, which will clearly and correctly reflect petitioner's net income. But the Commissioner takes exception to this method of accounting for income derived from long-term contracts, on the ground that under most of these contracts the commissions or fees, representing the petitioner's profits, were not due and payable until completion and acceptance of the work and could not be considered as income prior to the time they became due and payable. We think the manner of accounting for income from long-term contracts on the basis contended for by the petitioner is proper under the accrual method of accounting. The accrual method of accounting requires that at the end of every accounting period all income which has been earned during the period must be accounted for as income accrued in that period, though perhaps not collected, because it is not due and will not be collected until some future date. It contemplates that the income shall be determined on the basis of a fair distribution between the periods during which the income accrues. Under such a system of accounting a taxpayer accrues income, it does not receive it. *Appeal of Clarence Schock*, 1 B. T. A. 528. Accounting for the income on the basis contended for by the petitioner, the income from long-term contracts is apportioned between the taxable years in the same ratio that the work completed in each year bears to the whole, thus accruing the income in the years in which it was actually earned. It conforms entirely with the accrual method of accounting and, as we have said before, the accrual method will clearly reflect the petitioner's net income.

Whether the so-called completed contract basis of accounting for income derived from long-term contracts is a proper basis for computing net income under the income tax acts is a question which it is not necessary for us to decide in disposing of the issue before us, and we express no opinion in respect thereof. Suffice it to say, that the petitioner's books of account were not maintained upon the completed contract basis, as the Commissioner contends.

The petitioner's net income for the years 1917 and 1918 should be computed in accordance with the accrual method of accounting, the income from long-term contracts being determined upon the basis

that it accrued in the year in which it was earned according to the progress of the work, as evidenced by the expenditures under these contracts.

During the year 1918 the petitioner had a Government contract on which all work was stopped because of cancellation thereof on December 6, 1918. Owing to the inability of the United States Housing Corporation to determine certain adjustments in connection with the work which had been done, the profit could not be ascertained until some time in 1919. Pending the final determination of the profit from this contract, a lump sum of $32,000 was credited in 1918 to profit and loss for that year. When all adjustments and doubtful items had been settled in 1919, an additional amount of $14,061.91 was found to be due the petitioner. The petitioner contended that this item of $14,061.91 constituted income for the year 1918, and alleges error on the part of the Commissioner in failing to include the same in the net income of that year. The allegation of error is admitted by the Commissioner in his answer to the petition. The net income for the year 1918 should be increased by the sum of $14,061.91.

> *Judgment will be entered on 15 days' notice, under Rule 50.*