NATIONAL CONTRACTING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24520. Promulgated January 29, 1932.

*H. V. Mercer, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

## OPINION.

LANSDON: The petitioner seeks a redetermination of overassessments for the years 1920, 1921 and 1922. This Board has no jurisdiction where overassessments do not arise from the denial of a claim in abatement, even though such overassessments are included in the notice in which the Commissioner asserts deficiencies for other years. This proceeding, in so far as it relates to years in which overassessments only have been determined, is dismissed. Section 274 (g), Revenue Act of 1926; *Cornelius Cotton Mills*, 4 B. T. A. 255; *W. H. Morefield et al.*, 4 B. T. A. 394.

The petitioner contends that the group of eight contracts herein designated as 60, 63 and 64 should be regarded as covering a single job which was completed in 1925, and that all profits therefrom must be reported as income in the year of completion. The respondent has broken the group into separate jobs and determined the deficiencies here in question on the theory that the major portion of the work was completed in 1923 and 1924. The parties agree that the tax liability in controversy should be computed on the completed-contract basis. This Board must determine, therefore, (1) whether the construction undertaken by the petitioner is to be regarded as a single job, or whether each contract was a separate job with its own completion date; and, (2) if the entire construction is to be regarded as a single job, whether it was completed in 1923 or 1924, or in some subsequent year not now under review.

The eight contracts here in question covered all the work undertaken by the petitioner in connection with alterations and construction of two school buildings erected for the District. All are governed by the terms of an instrument designated "The General Conditions of the Contract," a standard form used by the American Institute of Architects. Each of the separate contracts contains the following:

The contractor and the owner agree that the General Conditions of the Contract, the specifications as modified by Addenda No. 2, which have been identified on the first and last sheets by initials of Contractor and Owner; together with the agreement form the Contract and that they are as fully a part of the contract as if hereto attached or herein repeated. * * *

" The General Conditions of the Contract " is made up of 45 sections, each of which applies to every engagement undertaken in each of the several attached contracts. Its terms require that at the completion of the work, " he [the contractor, petitioner here] shall remove all his rubbish from and about the building and all his tools, scaffolding and surplus materials and shall leave his work ' broom clean ' or its equivalent, unless more exactly specified." It also provides that " the Contractor shall promptly remove from the premises all materials condemned by the Architect as failing to conform to the Contract, whether incorporated in the work or not, and the Contractor shall promptly replace and re-execute his own work in accordance and shall bear the expenses of making good all work of other contractors destroyed or damaged by such removal or replacement." Under the terms of " The General Conditions of the Contract," this petitioner was the first on the job and the last to leave, until every condition of every contract had been fulfilled. The eight several contracts cover parts of the same construction, all of which was undertaken by the petitioner for a single owner. The completion of all effected the completion of the job, and, until the last work was done on the last unfinished part of the job, the petitioner was bound by all the terms of " The General Conditions of the Contract."

The petitioner always regarded the work covered by the eight contracts as a single job. It effected no separate organization, had no separate foreman or superintendent for the several kinds of construction under the so-called separate contracts. It made no attempt to segregate or allocate the costs of discharging its operations under each contract. It is in evidence that in a single day or even in a single hour, one mechanic might work on the construction involved in two or more of the contracts. The entire work to be done was broken up into eight separate undertakings for convenience in construction and reletting to subcontractors. It is our opinion that " The General Conditions of the Contract," together with the eight separate contracts attached thereto, cover a single job and that completion thereof required the discharge of the obligations undertaken in each of such contracts.

The date of completion must be determined by the evidence. Petitioner's witnesses on this point all testified that the petitioner and some of the subcontractors were at work as late as March, 1925. Its records show that it incurred expenses and received substantial payments on the job in that year. Its officers testified that it fin-

ished its work, cleaned up, and moved out in March, 1925. The respondent introduced no evidence in rebuttal and relies on his cross-examination of the witnesses called by the petitioner. He lays some stress on the proved fact that all the work was 80 per cent or 90 per cent completed when it was stopped by injunction and argues that petitioner could easily have discharged all his contractual obligations in 1922 or 1923, at the latest, attaching no importance to the fact that the injunction proceedings not only interrupted the work, but resulted in damage which materially delayed the construction that remained to be done upon resumption. The evidence is convincing that the petitioner was still on the job early in 1925, and we are of the opinion that the contract was completed in 1925. It follows, therefore, that income therefrom is not taxable in 1923 or 1924.

The second issue relates to the method of allocating overhead costs when a taxpayer is engaged on several contracts and proposes to report income from each on the completed-contract basis. The formula used by the petitioner is fully set forth in our findings of fact, together with the results of its application to the petitioner's accounts during the years involved. Unless a taxpayer reporting profit on a completed contract basis is to be deprived of all deductions from gross income on account of overhead costs, it is difficult to see how any other method could be employed. The petitioner's formula is in conformity with article 36 of Regulations 65 and with good accounting practice and, in our opinion, results in a reasonable, accurate determination of overhead costs. The amount of $50,890.48 should be deducted from petitioner's gross receipts from the contracts in question as an element of the cost of construction. This conclusion is of no importance in the decision of the issues here, since we have held that work covered by contracts 60, 63 and 64 was a single job that was completed in 1925 and these apportioned overhead costs are, therefore, deductible in that year instead of in any of the years under review.

The record does not sustain the petitioner's claim of a deductible loss in 1924, in the amount of $27,386.42. This alleged loss resulted from a job undertaken in 1919 without advertising and on an oral contract, on which work was stopped by an injunction before it was completed. Petitioner claimed $80,000, was paid $37,023.08 less than that amount, and sued for the remainder. It obtained a *quantum meruit* judgment in 1924 which left the amount finally received less by $27,386.42 than its claim. It now contends that it should be allowed a deductible loss in such amount as sustained in the year in which the court decided its claim. There is here no evidence of any

loss sustained in 1924 or at any other date. The record is silent as to the cost of the work done and it is impossible therefore to determine whether the entire amount claimed was cost or cost plus profit. The fair presumption is that it included the cost plus the profit contemplated in the oral contract and, for all we know, the entire claim may represent profit which the petitioner would have realized had it been permitted to finish the job. No loss having been proved, the deduction claimed is denied.

The fourth issue is whether the petitioner should be allowed to add the amount of $26,092.51 to the cost of contracts 60, 63 and 64. Since we have found that such contracts were completed in 1925 and that year is not before us, it is not necessary to decide this question.

Petitioner asserts for its fifth cause of action that the respondent improperly added $3,892.47 to its gross income for 1924, as interest received in that year. The record discloses no basis for any finding of fact adverse to the determination of the respondent. The petitioner's books show credit for interest in a certain account in that amount. No evidence adduced at the hearing overcomes the presumption that such entry and the determination of the respondent based thereon are not correct. The determination of the respondent is approved.

The last question is whether penalties imposed for negligence shall be collected. The evidence shows that petitioner kept a good set of books that diverged only on minor points from the requirements for reporting income from long-time contracts on the completion basis. It is true that overhead costs were not worked out and allocated for each year, but that omission is important only if income from contracts is to be reported on either the accrual or cash basis. The entries necessary to allocate the entire overhead cost of contracts 60, 63 and 64 were all on the books for each year and only the application of the formula used by the petitioner was necessary to determine the amount thereof at any given time. It was not necessary, however, to make any such determination until 1925. There were other minor divergencies from a perfect system of books, but they were of small importance and without effect as to income reflected. The penalties for negligence should not be collected.

*Decision will be entered under Rule 50.*