THE CEM SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65650. Promulgated May 16, 1933.

J. *Marvin Haynes, Esq.*, for the petitioner.
F. L. *Van Haaften, Esq.*, for the respondent.

OPINION.

ARUNDELL: This proceeding, when initiated, involved deficiencies in income tax for the period February 21 to December 31, 1928, and the calendar year 1929 in the respective amounts of $209,505.54 and $270,273.05. The parties, however, have stipulated the correct deficiency for the year 1929, and, pursuant to the stipulation, decision for that year has been entered.

For 1928 the parties have stipulated the correct deficiency to be $31,752.31, " if the Board determines from the facts to be presented herein, that the statutory period for assessing and/or collecting the said deficiency for 1928 has not expired." As indicated by this agreement of the parties, the only question is whether the statute of limitations has run against the respondent. The solution of this depends entirely on whether a certain return complied with the stat-

utory requirements concerning the filing of returns. The facts were stipulated, and we adopt the stipulation as our findings of fact, giving here only a brief summary.

The Cem Securities Corporation (not the petitioner here) was organized under the laws of New York sometime prior to the year 1928. On February 21, 1928, the Cem Securities Corporation (the petitioner) was organized under the laws of Delaware, and on the same day acquired all the assets, except a designated amount of cash, and assumed all the liabilities of the New York corporation of the same name.

On March 13, 1929, petitioner filed an income tax return on Form 1120, which was stated in the printed portion of the caption to be "For Calendar Year 1928." In the space therefor on the return the name and address of the taxpayer were given as: "The Cem Securities Corporation (A Delaware Corporation), 4425 Eastern Ave., Baltimore, Md." The affidavit was executed before a notary public by Charles E. McManus, president, and J. J. Nagle, assistant treasurer. The return was transmitted to the collector at Baltimore with a letter dated March 12, 1929, in which the return was stated to be that of "the Cem Securities Corporation (a Delaware Corporation) for the year 1928."

The return filed by petitioner showed a loss of $38,428.27. In computing this amount the petitioner used as a deduction a net loss sustained by the New York corporation in the period January 1 to February 20, 1928, in the amount—according to its figures—of $73,715.18. Among the schedules attached to the return was one showing the assets and liabilities of the New York corporation at January 1, 1928, and those of the petitioner at December 31, 1928. Other schedules attached show compensation paid, general and administrative expenses, profit on sale of stocks and bonds, and dividends received.

In the space provided on the face of the return for the auditor's stamp the following stamped legend appears:

REVIEWED

Preliminary Audit
Section
By _____ A R_____
Date Jul 12, 1929

On March 29, 1930, petitioner received a letter from the then Commissioner of Internal Revenue, Robert H. Lucas, addressed to it at the address given on the return, reading as follows:

The Bureau of Internal Revenue is pleased to inform you that your income tax return for the year 1928 has been examined and is considered to be correct as submitted.

I am sure you will appreciate that should subsequent information be received which would materially change the amount reported, the Bureau is obliged under existing laws to redetermine your tax liability.

No return for 1928 or any portion of that year, other than that above described, has been filed by either the petitioner or the New York corporation, nor has any return for that year been filed for either corporation by the respondent or the collector. The petitioner and the New York corporation have not at any time refused to furnish any data or information requested by the respondent or his agents concerning any return filed, and the books and records of both corporations have always been available for examination and audit.

The deficiency notice upon which this proceeding is based is dated March 7, 1932, and was received by petitioner on March 8, 1932.

The question here is whether the return filed on March 13, 1929, complies with the requirements of section 52 (a) of the Revenue Act of 1928 as follows:

Every corporation subject to taxation under this title shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer. * * *

If the return filed meets the requirements of the statute just quoted, then the two-year statute of limitations became operative on the date of filing and the deficiency notice, mailed more than two years thereafter, was too late to permit assessment and collection. If not, the proceeding becomes a " no return " case and the respondent may now assess and collect the stipulated deficiency.

There is no question as to the return having been properly executed by its corporate officers. The respondent's objection to treating it as a proper return is based on the failure to show " specifically the items of * * * gross income and the deductions and credits allowed."

There are a number of decided cases dealing with the question of the adequacy of returns for the purpose of starting the period of limitation, some of which mark at least partially the outer boundaries of the question. Thus, it is settled that a tentative return is insufficient, *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U.S. 445, and the same is true of a return not verified, *Lucas* v. *Pilliod Lumber Co.*, 281 U.S. 245. On the other hand, where a return should have been made on the calendar year basis but was made on the basis of a fiscal year, it is not for that reason a nullity if there was an honest effort to comply with the statute and if it contains a report of income for the period involved. *Mabel Elevator Co.*, 2

B.T.A. 517; 17 Fed. (2d) 109; *Bastrop Mercantile Co., Ltd.*, 7 B.T.A. 529. A return on the wrong form may be sufficient. *J. R. Brewer, Administrator*, 17 B.T.A. 704. A return in which there is a "mere inaccuracy"—the claiming of a credit larger than allowed by the statute—is sufficient to put the statute of limitations in motion. *Valentine-Clark Co.* v. *Commissioner*, 52 Fed. (2d) 346. In *Stetson & Ellison*, 11 B.T.A. 397; aff'd., 43 Fed. (2d) 553, the consolidated return filed did not set forth specifically the details of income and deductions with respect to each member of the group, but the return was held sufficient on the ground that the statute relating to consolidated returns did not require the filing for each company of a separate return containing such details for each of the group. We there said that the rule in such cases is that there must be a "substantial compliance" with the requirements of the statute. Further, "what constitutes a substantial compliance must necessarily vary according to the circumstances in each individual case."

In *American Vineyard Co.*, 15 B.T.A. 452, the property and business of that company were acquired on May 1, 1917, by a newly organized corporation, the American Seedless Raisin Co. On March 30, 1918, joint income and profits tax returns were filed reflecting the operations of both companies for the portion of the calendar year 1917 that each was in business. The returns bore the names of both companies. They did not show separately for each company the items of income or deductions for those portions of the year in which they were in business. In holding the returns insufficient we said:

> The two corporations were not affiliated and it is not contended that they were. They did not file a consolidated return, and it is not contended that they were entitled to file such a return. The return simply included the income of one corporation for one portion of the calendar year 1917 and of the other corporation for the remainder of the year, but made no segregation or separation of the income, gains, profits or deductions of the two corporations. This return did not specify nor give any information by which the income of either of the companies could be determined. There was no specification as to what proportion of the income was received by one or the other. * * * With respect to the inclusion by the American Vineyard Company of its income during 1917 in the joint return, the statute does not provide for or warrant the filing of joint returns by two corporations for a taxable year when one retires from business at some time during the period. This is not a case of consolidated returns and is not covered by the principles of law applicable to such returns. In our opinion the joint return was not the return required by law with respect to either company and the inclusion by the American Vineyard Company of its income in this return did not start the running of the period of limitations. * * * Since the return filed for the calendar year 1917 was not a return with respect to either company as required by law, the inclusion by the American Seedless Raisin Company of its income from

May 1, 1917, to December 31, 1917, in such return did not start the period of limitations running against the assessment and collection of the deficiency determined against that company for the period from May 1, 1917, to December 31, 1917.

The only difference between that case and the one before us is that there the return bore the names of both corporations. That, in our opinion, is not an effective distinction. The substance of the matter in both cases is that the return includes the operations of two companies without a segregation of items as required by statute and hence is not the statutory return of the company filing it. The conclusion reached in *American Vineyard* case is in line with the Supreme Court's holding as to the duty of taxpayers to file proper returns. In *Florsheim Bros. Drygoods Co.*, *supra*, after describing the duties of the Commissioner in regard to making determinations and assessments, the court said:

* * * The burden of supplying by the return the information on which assessments were to be based was thus imposed upon the taxpayer. And, in providing that the period of limitation should begin on the date when the return was filed, rather than when it was due, the statute plainly manifested a purpose that the period was to commence only when the taxpayer had supplied this information in the prescribed manner. Form 1120 provided for furnishing the data which would enable the Commissioner to make a determination, assessment, and recomputation. * * *

* * * The word "return" is not a technical word of art. It may be true that the filing of a return which is defective or incomplete under section 239 is sufficient to start the running of the period of limitation; and that the filing of an amended return does not toll the period. But the defective or incomplete return purports to be a specific statement of the items of income, deductions, and credits in compliance with section 239. * * *

In *Warner Collieries Co. of Delaware*, 26 B.T.A. 1047, it appears that the Crawford Hill Coal Co. was taken over by the Warner Collieries Co. as of April 1, 1919, and the entire income of the Crawford Hill Co. after that date was included in the return of the Warner Co. for the fiscal year ended March 31, 1920. In holding that the return so filed did not start the operation of the limitation period we said:

Every return must show facts upon which an assessment for the taxable period can be made. *Florsheim Brothers Co.* v. *United States*, 280 U.S. 453; *Willingham Loan & Trust Co.* v. *Commissioner*, 36 Fed. (2d) 49; *Myles Salt Co.* v. *Commissioner*, 49 Fed. (2d) 232. Where such information is given the statute begins to run. In the case of consolidated returns we have held that they must be filed in good faith and must make a substantial revelation of the gross income and deductions separately for the constituent members of the affiliated group. *F. A. Hall Co.*, 3 B.T.A. 1172; *Stetson & Ellison*, 11 B.T.A. 397; affd., 43 Fed. (2d) 553; *Continental Oil Co.*, 23 B.T.A. 311; *New England Power Co.*, 25 B.T.A. 195. If they do not do so they are not the returns contemplated by the statute of limitations. *United States* v. *National Tank & Export Co.*, 45

Fed. (2d) 1005; *Lucas* v. *Colmer-Green Lumber Co.*, 49 Fed. (2d) 234, reversing 12 B.T.A. 256.

The return in question sets forth only the income, deductions, and credits of both corporations combined. Only the balance sheets reflecting the assets and liabilities of each corporation as of March 31, 1919, were included in the return. Such information is not sufficient basis for the assessment of tax. Therefore, the statute of limitations does not bar the assessment of the tax against the Crawford Hill Coal Company.

In accordance with the holdings in the several cases last discussed, we are of the opinion that the return filed by petitioner, in failing to show separately the items of its income, deductions, and credits, did not meet the requirements of the statute and was inadequate to start the running of the limitations period.

We do not see that the stamps put on the return by the respondent's office or the letter received by petitioner from respondent on March 29, 1930, have anything to do with the question involved here. If the purported return was not such as a matter of law, stamping it or mailing letters in regard to it could not make it a valid return.

*Decision will be entered redetermining the deficiency for 1928 to be $31,752.31.*