*Decision will be entered under Rule 50.*

NATIONAL CONTRACTING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78882. Promulgated April 14, 1938.

690

*H. V. Mercer, Esq.*, for the petitioner.
*E. C. Algire, Esq.*, for the respondent.

694

**OPINION.**

OPPER: *Issues (1) and (5).*—The first issue is whether there was a failure to file a return as defined in the Revenue Act of 1926 so that respondent's determination of a deficiency has not been barred by the statute of limitations. For convenience the fifth issue, whether the 25 percent addition to tax for failure to file a return (imposed

by section 3176 of the Revised Statutes, as amended by section 1103 of the Revenue Act of 1926) is collectible, will be discussed at the same time.

Neither the "tentative return" filed by the petitioner in March 1926 nor the further document filed by it shortly thereafter and not designated "tentative" contain the itemized statements of gross income and deductions and credits required by section 239 of the Revenue Act of 1926.[1] These documents were not the returns required by the act and consequently petitioner did not thereby set the statute of limitations in operation. *Florsheim Brothers Drygoods Co.* v. *United States*, 280 U. S. 453. Nor did the examination or audit of petitioner's books by the Commissioner have that effect. *Gem Securities Corporation*, 28 B. T. A. 102; affd., 72 Fed. (2d) 295; *S. Feather Co.*, 28 B. T. A. 432.

The real issue between the parties is whether the revenue agent's report, and accompanying papers, introduced as Joint Exhibit 3, either separately or collectively constitute such a return within the meaning of the act[2] as would have the effect in 1927 of setting the period of limitation in operation so that by 1935, the date of respondent's 90-day letter, further action by respondent was barred. No cases are cited by counsel for either side which appear to be directly determinative of this question. It is clear, however, that the burden of proof of any facts necessary to sustain the defense of the statute of limitations is upon the petitioner. *M. A. Nicholson*, 22 B. T. A. 744.

Joint Exhibit 3 consists of four parts—a revenue agent's report of the ordinary type covering an examination of the books of the petitioner; a letter from the office of the internal revenue agent in charge transmitting a copy of this report to the taxpayer; a form (No. 875) acknowledging receipt and stating acceptance of the examining officer's findings which was submitted for the taxpayer to sign; and a copy of a letter from the petitioner acknowledging receipt of the revenue agent's report. The letter of transmittal is headed "Office of Internal Revenue Agent in Charge." It is signed "G. W. Kurtz,

---

[1] (a) Every corporation subject to taxation under this title shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer. * * *

[2] Revenue Act of 1926—

SEC. 277. (a) Except as provided in section 278—

(1) The amount of income taxes imposed by this Act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

* * * * *

SEC. 278. (a) In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. * * *

Internal Revenue Agent in Charge." The preliminary statement of the agent's report begins:

| Years | Additional Tax | Overassessment |
|-------|----------------|----------------|
| 1925  | ―――――――――――    | ―――――――――――    |

Net additional tax or overassessment: None.

The acknowledgment of receipt signed by petitioner refers to "report covering the *examination* made by Revenue Agent Alfred Greguson of the *income tax returns* of the above-named taxpayer for the year 1925." (Italics ours.) "Assessments are frequently based on audits of the Income Tax Unit. However, the purpose of these audits is not to eliminate the necessity of filing the return but to safeguard against error or dishonesty." *Florsheim Brothers Drygoods Co.* v. *United States, supra.*

It will thus be seen that nothing appears in this exhibit which purports to treat any part of it as a return. It is true that the revenue agent in his report says: "The result of this examination was explained in detail to Mr. J. O. Shulind, President of the company, and with [*sic*] Mr. A. G. Shulind, Vice President of the company. They concurred with the examining officer in all findings." But the form attached to the report (No. 875) was evidently not signed on behalf of the corporation, as it appears in Joint Exhibit 3 in blank. This form includes the statement "the undersigned has reviewed this report and hereby accepts as correct the finding of the examining officer." Failure to execute this statement precludes petitioner from taking the position, even if it were otherwise able to do so, that its formal acceptance of the revenue agent's report resulted in the adoption of that report by it as its return.

Petitioner calls attention to the following language in section 3176:[3] "Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes." This provision, far from leading to the conclusion advanced by the petitioner, appears to require an exactly contrary result. No evidence whatever was introduced by petitioner that any part of Joint Exhibit 3 was either subscribed by a collector or

---

[3] Section 3176, Revised Statutes, as amended by section 1103, Revenue Act of 1926:

"If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner of Internal Revenue may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes. * * * *"

deputy collector or subscribed or approved by the Commissioner. A ruling promulgated in 1925 specifically denies to revenue agents and inspectors any authority to exercise the power of filing returns for delinquents under section 3176. S. M. 3389, C. B. IV–1, p. 49. Even had the document purported to be a return, which as we have seen it did not, no action by an unauthorized subordinate by way of approval or subscription could have had the statutory effect.

It follows that petitioner has failed to sustain the burden of proof that any return whatever was filed at any time which so complies with the requirements of the Revenue Act of 1926 that the statute of limitations constitutes a bar to respondent's action.

This conclusion necessarily results in the further consequence that the 25 percent additional tax is applicable. It is only "when a return is filed after such time"[4] that, if there is reasonable cause and absence of willful neglect, the additional tax is not imposed. Cf. *Jockey Club*, 30 B. T. A. 670. Here no return was ever filed. In such a case imposition of the additional tax is mandatory. *Scranton, Lackawanna Trust Co., Trustee*, 29 B. T. A. 698; affd., 80 Fed. (2d) 519.

*Issue (2)*.—It is not entirely clear from the pleadings and briefs upon what theory the respective parties are proceeding. The Commissioner's 90-day letter states: "The Bureau has held that the alleged assignments were invalid, and that the profits from these contracts constituted income to you. * * * In order to deduct such payments from gross income it must be shown that they represented ordinary and necessary expenses of doing business, * * *." The petition alleges that the Commissioner "erred in holding that a deduction of $73,500 should not be allowed to the taxpayer on account of amounts paid by it to Tollef Jacobson, A. G. Shulind and J. O. Shulind paid to them in 1920 by reason of a certain resolution dated May 16, 1920 and assignment dated June 10, 1920 and his ruled invalidity of such resolution and assignment and that *as a result* that the money so paid was not an ordinary or necessary business expense. * * *." (Italics ours.)

It is, however, sufficiently apparent that the questions are: Whether the assignment was valid; whether, even though valid as between the parties, the assignment operated as a valid transfer of income from the petitioner for tax purposes; and whether (if the assignment be invalid or if despite its validity amounts received by petitioner must

<hr>

[4] Section 3176, Revised Statutes, as amended by section 1103, Revenue Act of 1926:
"* * * In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax. * * *"

nevertheless be included within its gross income) the circumstances under which the payments were made by the petitioner made them deductible as ordinary and necessary expenses of its business.

Whatever may have been the form of the transaction, it is evident from the action of the parties under it that the assignment in question was no more than an assignment of petitioner's expected profits. The contract itself forbade its assignment without the consent of the school district and no such consent appears; the work was done, even after the assignment, by the petitioner; petitioner's books carried items in connection with these contracts after, just as before, the assignment; and, perhaps most significantly, even in the present proceeding petitioner treats the contracts as its own and attempts to secure the benefit of expenses and deductions connected with the contracts during periods subsequent to the date of assignment. These facts sufficiently distinguish the present proceeding from *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777.

Whether the assignment was valid and particularly whether it could be enforced as between the parties does not now call for decision. Suffice it to say that at most the assignment was a transfer of a future right in earned income without any accompanying transfer of the services or property from which the income is derived. Such a transfer is insufficient to avoid the requirement that the proceeds be included in gross income by the assignor. *Burnet* v. *Leininger*, 285 U. S. 136; *Van Meter* v. *Commissioner*, 61 Fed. (2d) 817; *Saenger* v. *Commissioner*, 69 Fed. (2d) 631. See also *Traylor Engineering & Manufacturing Co.* v. *Lederer*, 271 Fed. 399.

There remains for discussion however the question whether the amounts paid by petitioner to the three individuals were ordinary and necessary expenses of carrying on petitioner's trade or business. Financing is of course ordinary and necessary in many business enterprises. However, the burden of proof is on the petitioner to show "that extraordinary, unusual and extravagant amounts paid by a corporation" are in reality "ordinary and necessary expenses." *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Alexander Sprunt & Son, Inc.* v. *Commissioner*, 64 Fed. (2d) 424.

The evidence shows that Tollef Jacobson advanced nothing to the corporation in consideration of the $24,500 paid to him under the assignment. He was a banker who sometimes served as the personal surety required by the companies which bonded the petitioner, and the petitioner's borrowings were largely obtained from Jacobson's banks or through his banking connections. It was for his continued cooperation in these matters that he was paid $24,500. While these were services rendered to the petitioner by Jacobson, there is no showing of details as to their time or extent, nor of their

entire applicability to contract 60–63–64, nor that $24,500 or any other sum represented their reasonable value. The statute[5] specifically limits deductions for compensation for services to "reasonable" allowances, and since there is no showing that Tollef Jacobson's compensation was reasonable the deduction therefor can not be allowed. *Reynard Corporation*, 30 B. T. A. 451.

The payments to A. G. Shulind and J. O. Shulind did not purport to be compensation for services, but payments in consideration of loans to the petitioner. The advances totaled $33,100, for which the two individuals received $49,000 from the petitioner within the same year, chiefly in stock. The advances remained as liabilities owing to them as open accounts on the books of the petitioner. The two Shulinds were its principal stockholders. In such a case the petitioner must show that it is not merely distributing profits to its stockholders in another guise. *L. Hyman & Co.*, 21 B. T. A. 159, 167; *Moxa Building Co.*, 31 B. T. A. 457; affirmed per curiam, 79 Fed. (2d) 1004; *Samuel Heath Co.* v. *United States*, 2 Fed. Supp. 637; *C. S. Ferry & Son, Inc.*, 18 B. T. A. 1261. Far from showing this, what evidence there is indicates the contrary. One significant circumstance is that an issue of preferred stock accounting for $25,000 of the payment to the Shulinds is recorded on May 20, 1920, contemporaneously with the advances and prior to the actual assignment under which it purports to be authorized, which was not executed until June 10, 1920. Again, in addition to these payments, a 20 percent cash dividend on the common stock was declared as of the end of the same year. Finally, there is the disproportionate return which the compensation represents compared to the amount of the advances. The petitioner failed to show the impossibility of borrowing money elsewhere more cheaply. We do not accept as sufficient proof the general and unsupported statement that the petitioner "had no other means of financing itself at that time."

We conclude therefore that whether the transaction entered into be considered from the standpoint of possible reduction of gross income on the one hand, or a deduction on account of ordinary and necessary expense on the other, the petitioner has not sustained its burden of proof that respondent's determination was erroneous.

*Issues (3) and (4).*—For convenience of discussion issues (3) and (4) will be treated together, since we are of the opinion that they involve two aspects of the same question. Issue (3) is the claimed

---

[5] Revenue Act of 1926—

SEC. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *.

deduction of $60,204.16 paid or incurred up through 1925 as expenses growing out of an injunction proceeding against the petitioner with respect to contract 60–63–64; and issue (4) is a claimed bad debt of $21,665.15 resulting from a failure to recover that sum which had been accrued in 1919 as a claim partly for profits and partly for reimbursement of expenditures under contract 53, the performance of which was permanently halted by injunction in 1919.

The parties are agreed that the petitioner is properly subject to the completed contract provisions [6] and that contract 60–63–64 was completed in 1925; and the petitioner's claim is not disputed that contract 53 was completed so far as the petitioner was concerned in 1919 and was so treated. It is not, therefore, necessary for us to consider whether the petitioner might, under the completed contract method of accounting and in accordance with a consistent practice, have treated each contract as open until all claims arising out of it were settled (cf. *Rice, Barton & Fales, Inc.* v. *Commissioner*, 41 Fed. (2d) 339, 341; *Carolina Contracting Co.*, 32 B. T. A. 1171). No such contention is made by the petitioner and no showing of any such attempted treatment or consistent practice is in evidence. The contracts were, therefore, properly treated as closed in 1925 and 1919, respectively, when the work under them was completed. See *National Contracting Co.*, 25 B. T. A. 407; affd., 69 Fed. (2d) 252. We are concerned, however, with the question of the correct method of accounting for the two contracts when completed in 1925 and 1919, respectively, since that appears to be determinative of both of the deductions which are claimed under these issues by the petitioner.

In the case of contract 53 the petitioner's claim for profits and reimbursement for expenditures was accrued by the petitioner when the contract was completed in 1919. In the case of contract 60–63–64 no accrual of the petitioner's claim for reimbursement of the injunction expenditures incurred in the performance of that contract was made when the contract was completed in 1925. Both items were disputed claims in litigation, so that no reason appears for the petitioner's failure to show a consistent treatment in closing its contracts. Only one of the two methods can in any event be permissible; the petitioner must at least be held to a uniform practice,[7] and if the accrual of the litigated claim in the one case is not proper the same result must follow in the other.

Under the completed contracts method of accounting the ordinary rule in the case of items outstanding when a contract is "completed" is that "it is the right to receive and not the actual receipt that deter-

[6] ART. 334, Treasury Regulations 74. See *National Contracting Co.*, Docket No. 79290 (memorandum opinion) decided herewith.
[7] *Cameron, Joyce & Co.* v. *United States*, —— Fed. Supp. —— (U. S. Dist. Ct., Iowa, Dec. 7, 1937). See *Owen-Ames-Kimball Co.*, 5 B. T. A. 921, 927.

mines the inclusion \* \* \*." [8] Unless this accrual of outstanding items is made in the year of completion, the purpose of the completed contracts method, namely, to account for the entire results of a contract at one time,[9] is defeated. However, as a general principle, when outstanding items are "contingent and uncertain," such as disputed claims in litigation, accrual is not proper. *Commissioner* v. *John Thatcher & Son*, 76 Fed. (2d) 900; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. While no case has apparently purported to determine this question under the long term contracts method, no reason appears why the rule should be less applicable to that type of accrual. And that this procedure may leave the exact profit or loss open for future adjustment is not fatal. *W. J. Scholl Co.*, 30 B. T. A. 993, 997.

We conclude therefore that it was improper for the petitioner to accrue in 1919 its outstanding claim under contract 53. Consequently no deduction can be allowed in 1925 for the failure to recover $21,-665.15 thereof. *Commissioner* v. *John Thatcher & Son, supra.* The $60,204.16 claimed as a deduction under contract 60–63–64 is, however, allowable since it represents expense actually paid or incurred and not disputed. *Commissioner* v. *John Thatcher & Son, supra.* The petitioner was not required to accrue in 1925 an equal amount representing its outstanding claim for reimbursement which would have offset the deduction; nor, what would have been similar in result, to suspend the accrual of this item of deduction until the outstanding claim was finally determined.

*Decision will be entered under Rule 50.*

[8] *Cameron, Joyce & Co.* v. *United States, supra; Vansant* v. *Crooks*, 43 Fed. (2d) 166; see *Rosa Orino*, 34 B. T. A. 726, 730.
[9] See *James C. Ellis*, 16 B. T. A. 1225, 1228.