CAROLINA CONTRACTING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77638.   Promulgated August 8, 1935.

*F. A. McCleneghan, Esq.*, and *J. L. Elliot, C. P. A.*, for the petitioner.

*Thos. F. Callahan, Esq.*, for the respondent.

#### OPINION.

SMITH: The respondent has determined a deficiency in petitioner's income tax for the fiscal year ended February 29, 1932, in the amount of $3,608.65. The principal part of such deficiency, and the only part which the petitioner is contesting in this proceeding, is due to the respondent's action in adding to the petitioner's income the amount of $25,418.59, representing the unreported profits on construction contracts completed by the petitioner in the taxable year 1932. The facts have been stipulated.

The petitioner is a contracting company, engaged in building highways. In reporting its income for Federal income tax purposes it has adopted and followed the method of reporting income on the completed contract basis.

In February 1930 the petitioner began work on certain highway projects under contracts with Richland County, South Carolina, which work was completed and accepted during the taxable year. The first payment on the contracts was received by the petitioner during March 1930, and the last payment during October 1931, with an adjustment of final payment during November 1931.

A certain part of the work on these contracts was sublet by the petitioner to one F. W. Simpson, who furnished bond in the principal amount of $25,000 with the Standard Accident & Insurance Co. The bond contained a clause providing for increase of the principal sum not to exceed 50 percent of the total cost of work done in case of change in specifications, the premium to be adjusted and the

balance to be paid at completion of the project. Early in 1931 the subcontractor became in arrears in his payments to his creditors who had furnished him with materials and supplies to be used in the projects, with the result that the petitioner was forced to complete the work which the subcontractor had undertaken. The subcontractor became insolvent and remained insolvent during the entire year.

As a result of the subcontractor defaulting his creditors brought suit against him and his surety, the Standard Accident & Insurance Co. Suit was subsequently brought against the petitioner and its surety, the Consolidated Indemnity & Insurance Co., and the causes were consolidated for hearing and decision. Hearings were held by a special master for the United States District Court for the Eastern District of South Carolina, who rendered his report on September 4, 1931. On February 9, 1932, the United States District Court gave judgment that the Standard Accident & Insurance Co., the subcontractor's surety, was liable for the sum of $51,601.90 (50 percent of the cost of work completed by the subcontractor) plus interest and costs, but that the subcontractor's creditors might present and prove their claims against the petitioner and its bondsman, the Consolidated Indemnity & Insurance Co., who were held compelled to pay said claims but who in turn should have judgment against the subcontractor and his bondsman for payment so made not to exceed a total of $51,601.90. The petitioner was also held entitled to retain a balance of $7,165.18 due the subcontractor for work completed by him.

The above decision of the United States District Court was reversed by the United States Circuit Court of Appeals for the Fourth Circuit on April 4, 1933, and a writ of certiorari to the United States Supreme Court was denied on November 6, 1933.

The Standard Accident & Insurance Co. acknowledged liability to the extent of $25,000, which amount it paid into court, and which the court applied against proven claims aggregating $55,443.28. The balance of the claims, plus court costs and attorney fees, was paid by the petitioner during the fiscal year 1934. Some of the claims were settled at amounts less than the amounts originally claimed, so that the final result on the contracts, as shown on the petitioner's books in 1934, was a profit of $2,011.88. This gain in 1934 was predicated on no gain or loss in the taxable year 1932 and the petitioner's return for 1932 showed no gain or loss on the contracts. In his audit the respondent added to the petitioner's income the amount of $25,418.59 representing the profit on the contracts, exclusive of the amounts paid out by the petitioner as a result of, and upon termination of, the litigation.

At the hearing of this proceeding counsel for the respondent stated that his position was:

\* \* \* that the contracts were completed and satisfied during the taxable year ended February 29, 1932, that under the law and the regulations a determination of the profit or loss should have been made at that time and that subsequent events which we now know should not be taken into the computation of the net income for the fiscal year 1932, which must stand on its own feet, and any liability which the Carolina Contracting Company has set up on its books during the taxable year ending February 29, 1932, they would have to set up a contra-asset at the same time by reason of the District Court's opinion which held that the Carolina Contracting Company was liable but that they had recourse against the bonding company for the $51,000.

The respondent claims that he correctly computed the petitioner's income from the contracts in question in accordance with article 334 (b) of Regulations 77, which reads as follows:

(b) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.

A taxpayer may change his method of accounting to accord with paragraphs (a) and (b) of this article, only after permission is secured from the Commissioner as provided in article 322.

Both the respondent and the petitioner cite and rely upon our decision in *John Thatcher & Son*, 30 B. T. A. 510. There, the taxpayer, a contractor, secured a building contract and let out a part of the work to subcontractors. The subcontractors subsequently defaulted and the taxpayer, as required by his original contract, completed the project in 1919 at a cost of $63,785.60 over and above the amount received by him on the contract. He then brought suit against the subcontractors and their sureties and the litigation was concluded adversely to the taxpayer in 1928. We held that the taxpayer was entitled to deduct the amount of $63,785.60 as a loss of the year 1928 when the litigation was finally settled. Our decision was reversed by the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *John Thatcher & Son*, 76 Fed. (2d) 900, the court holding that the amount claimed as a loss was a part of the cost of completing the project and should have been accounted for in the prior year 1919. In its opinion the court said:

\* \* \* The deduction was allowed under section 23 (f) of the Revenue Act of 1928 (45 Stat. 800) which permits the deduction of " losses sustained during the taxable year and not compensated for by insurance or otherwise." It is as a loss which first became fixed and definite when its suit was lost in

1928, that the taxpayer now seeks to sustain the deduction. The Commissioner, on the other hand, contends that the deduction should have been taken when the work of completing the subcontractors' contracts was performed by the taxpayer, that is, during or prior to the year 1919, since the entire building was finished in that year.

In our opinion the Commissioner's position is correct. The cost of doing the work was necessarily paid or accrued in the years in which it was done, and was then deductible under section 214 (a) of the Revenue Act of 1918 (40 Stat. 1066) as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." In completing the work sublet to the defaulting contractors, the taxpayer was performing its own contract with the owner of the building. We cannot doubt, therefore, that the expenditures made and liabilities incurred in such performance constituted ordinary and necessary expenses paid or incurred in its business. Compare *Wadsworth Mfg. Co.* v. *Commissioner*, 44 F. (2d) 762, *supra* (C. C. A. 6). So far as this record discloses such expenses may have been deducted in those years. If they were, to allow the deduction in 1928 would be a duplication; but if they were not, the taxpayer's error in failing to claim a permissible deduction cannot be rectified by permitting it to be taken in a later year. See *United States* v. *Ludey*, 274 U. S. 295, 304, 47 S. Ct. 608, 71 L. Ed. 1054 [6 Am. Fed. Tax Rep. 6754]; *Darling* v. *Commissioner*, 49 F. (2d) 111, 113 [9 Am. Fed. Tax Rep. 1291] (C. C. A. 4), cert. denied, 283 U. S. 866. The fact that the taxpayer expended some $63,000 in excess of what it received for completing the work of the defaulting subcontractors reduced its taxable income for the years when the expenditures were made. Had it succeeded in recovering damages from the subcontractors or their sureties, such recovery would have been income in the year when received. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383 [9 Am. Fed. Tax Rep. 603]. Its failure to collect such income was not a loss of a sort permitted to be deducted in computing taxable income—it was no different from a failure to receive expected income such as dividends or interest payments. In our opinion the *Sanford & Brooks* case governs the case at bar, though there the precise issue before us was not directly involved.

In an earlier case, *T. E. McShaffrey Construction Co.*, 18 B. T. A. 750, the Board took the same view, apparently, as did the court in the *Thatcher* case. We there held that an amount paid in settlement of the debts of a defaulting subcontractor and in the completion of a building project undertaken by the taxpayer was not a loss deductible in a subsequent year when paid, but was a part of the cost of construction and should be carried into the computation of profit or loss on the entire contract in the year when completed. In that case we said:

* * * The respondent urges (1) that the loss, if any, on the contract was not sustained in 1920, because payment to the Standard Sanitary Manufacturing Co. was not made until 1921 and subsequent years, and (2) that the amount in question constituted part of the cost to the petitioner of constructing the Marne Hotel and is, therefore, a part of the basis for computing profit or loss on that contract.

* * * The obligation of the petitioner under its contract was to construct a hotel, including the plumbing and heating, for a certain sum. It chose to install the plumbing and heating fixtures through a subcontractor,

and on account of the default of the subcontractor, after he had received practically the maximum amount that might become due him under the subcontract, was required to pay for certain materials for which the subcontractor should have paid, and to complete and pay for their installation. The petitioner was primarily liable to furnish and install these plumbing and heating fixtures, and the amount they finally cost the petitioner, was, in our opinion, a part of the total cost to it of constructing the hotel, and the total cost is the basis for computing gain or loss on the contract with McShaffrey. We are unable to agree with the petitioner that the amount it paid for the plumbing and heating fixtures and for their installation in excess of the maximum amount it had contracted to pay Russell should be considered as a loss separate and apart from any profit or loss arising under the original contract. * * *

Applying the same principle in the instant case, the total amount expended by the petitioner in completing the contracts in question, including the amounts paid on the debts of the subcontractor for materials furnished and work done on the contracts, constituted a part of the petitioner's cost of completing the contracts and must be so computed. The respondent was therefore in error in computing a profit on the completed contracts in the taxable year 1932 of $25,418.59 without making any allowance for the additional cost which the petitioner had to bear on account of the default of the subcontractor.

At the close of the petitioner's taxable year 1932, the situation was that the contracts had been completed at a total cost in excess of the amount received by the petitioner, counting in the expenditures the amounts already paid out by the petitioner and the obligations incurred, but not paid, by the subcontractor. Assuming, then, as the respondent contends, but as we do not decide, that the contracts were completed within the meaning of article 334 above in the year 1932, when the work was accepted and the last payment on the contract price made by Richland County, the total result was a loss to the petitioner and not a gain. The error of the respondent was his failure to take into account the additional amounts which the petitioner, under its original contract, was obligated to pay for the materials furnished and other debts of its subcontractor. It is true that at the close of the year, under the ruling of the United States District Court, the petitioner, although being found liable for the subcontractor's debts, was entitled to recover these amounts from the subcontractor and his bondsman, but the liability of the subcontractor and his bondsman was still being contested in the courts and it was uncertain what amount, if any, the petitioner would ever be able to recover from them. The court said in *Commissioner* v. *John Thatcher & Son, supra:*

But if it were conceded that the excess expenditures should be deemed a "loss" rather than ordinary and necessary expenses, the result would be no

different. The loss occurred when the expenditures were made and was then deductible unless it was compensated for by insurance or otherwise. We think that the taxpayer's claim for damages against the subcontractors and their sureties was too contingent and uncertain to be treated as compensation by "insurance or otherwise" for the loss. It is clear from the authorities that the subcontractors and their sureties sustained no deductible loss because of the taxpayer's assertion of a claim which they disputed. *Lucas* v. *American Code Co.*, 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538 [8 Am. Fed. Tax Rep. 10278]; *Burnet* v. *Huff*, 288 U. S. 156, 53 S. Ct. 330 [11 Am. Fed. Tax Rep. 1386]. If the liability of the obligor is too contingent to be accrued as a loss to him, it would seem to follow that the claim of the obligee is likewise too contingent to be considered compensation for a loss already realized by the latter. See *Commissioner* v. *Highway Trailer Co.*, 72 F. (2d) 913 [¶1548 of P.-H. Fed. Tax Service for 1934] (C. C. A. 7); *Commissioner* v. *Southeastern Express Co.*, 56 F. (2d) 600 [10 Am. Fed. Tax Rep. 1357] (C. C. A. 5). * * *

The petitioner reported no gain or loss on the contracts in 1932 but held them open until 1934. We believe that under the completed contract basis of reporting the petitioner properly held the contracts open until 1934. Certainly it was not ascertainable definitely until that year just what the ultimate gain or loss would be. The year 1934 is not before us, however, and for the purpose of our determination in this proceeding it suffices to say that in our opinion the petitioner realized no gain from the contracts in question in the taxable year 1932.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MATTHEWS concurs in the result.