**T. A. BARHAM and Anne E. Barham,**
**Appellants,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 7591.

United States Court of Appeals
Fourth Circuit.

Argued April 10, 1958.

Decided May 27, 1958.

Eastwood D. Herbert, Norfolk, Va. (Herbert & Bohannon, Norfolk, Va., on brief), for appellant.

Mildred L. Seidman, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Lester S. Parsons, Jr., U. S. Atty., and William F. Davis, Asst. U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

This is an appeal from a judgment dismissing a civil action brought by appellants to recover 1953 income taxes.

Taxpayers, husband and wife, are building contractors who purchase sites, construct dwellings thereon, and sell the

completed homes. In 1953 they constructed a residence in Norfolk and sold it to H. L. Robinson under a contract which provided for the payment of $4,000 cash and was conditioned upon Robinson obtaining a first deed of trust loan on the property for $12,900, the balance of the purchase price. Application was made to the Commonwealth Building and Loan Association for such a loan, but the appraisal permitted a commitment for only $10,900. By agreement of all parties, Robinson executed a deed of trust and a note to the Association for $12,900, of which $10,900 was paid to taxpayers in cash. The remaining $2,000 was represented by forty shares of paid-up stock of the Association, issued to Anne E. Barham, one of the taxpayers. Mrs. Barham simultaneously executed an assignment of those shares to the Association. The assignment recited that it was made as additional security for the loan by the Association to Robinson, and that the assignment would remain in effect until the Association should deem its other securities sufficient. Dividends on the stock were paid to Anne E. Barham and reported as income to her on taxpayers' joint return. The government concedes that Mrs. Barham was acting for the partnership in receiving and assigning the shares.

Taxpayers reported their income under the completed contract method of accounting, a modified accrual method authorized by TR 118, sec. 39.42(4). See J. M. Turner & Co. v. Commissioner, 4 Cir., 247 F.2d 370, 373. In preparing their federal income tax return for the year 1953, taxpayers did not include in their income the value of the forty shares so assigned to the Association as collateral security. The Commissioner made a deficiency assessment; it was paid, and a claim for refund was rejected. The issue in this case is whether the $2,000, represented by the pledged shares, was income for 1953 or was not income to taxpayers until it became unconditionally payable to them.

The general principles which must control our decision have been au-thoritatively stated by the Supreme Court. "When the right to receive an amount becomes fixed, the right accrues." Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184, 185, 54 S.Ct. 644, rehearing denied 78 L.Ed. 1200, 292 U.S. 613, 54 S.Ct. 857, 78 L.Ed. 1472. Until the right to an amount becomes accruable through fixation of the right to receive, the taxpayer is under no obligation to return it as income. Otherwise, he would be required to pay a tax on income which he might never have a right to receive. North American Oil Consolidated v. Burnet, 286 U.S. 417, 423–424, 52 S.Ct. 613, 76 L.Ed. 1197.

These principles have been applied by this court and by other courts to postpone the accruability of various types of reserves where the taxpayer's right to receive the money was dependent upon some contingency. Johnson v. Commissioner, 4 Cir., 233 F.2d 952, and cases cited therein; Texas Trailercoach v. Commissioner, 5 Cir., 251 F.2d 395. See, also, Long Poultry Farms v. Commissioner, 4 Cir., 249 F.2d 726.

The district judge in the instant case recognized the principles stated in Johnson v. Commissioner, but considered that "taxpayers had the *right* to receive $16,900 for the sale of their completed house." He continued: "It was only because of the difficulties in securing a sufficiently large deed of trust that brought about the arrangement with respect to the deferred receipt of $2,000.00. It was, in effect, a complete settlement; the equivalent being that the taxpayer received all of the sales price and delivered $2,000 back to the Building and Loan Association substantially in the form of a guaranty of the purchaser's obligation, in exchange for which taxpayer received 40 shares of stock in the Association which was contemporaneously pledged as collateral security for the purchaser's deed of trust." However, the contract between taxpayers and Robinson was conditioned upon obtaining a mortgage loan of $12,900, which was refused unless $2,000 of the loan would be left on deposit with the Association in

the form of fully paid stock until the Association deemed "its securities sufficient to release this assignment * * *." Looking at the substance of the transaction, and not at the form, taxpayers in the instant case did not receive the $2,000, and their right to receive it in the future was not "fixed" but was subject to other contingencies than time and collectability.

The government argues that taxpayers had received an asset which could increase or decrease in value, and that the stock could be sold or otherwise transferred subject to the assignment. Under Virginia law, shares in a building and loan association are not like shares in an ordinary business corporation, but are comparable to deposits in a bank, withdrawable under certain conditions. Code of Va., 1950, Art. 5, §§ 6-174, 6-175, 6-179, 6-180, 6-182. The shares involved in the instant case had been pledged to the Association, and their value was not withdrawable until the Association, in its discretion, would permit such withdrawal. While it is true that taxpayers had an equity in the hypothecated shares, which they could sell if they could find a purchaser, that equity had no market value and was subject to such contingencies that as a practical matter it had no value for tax purposes. The fact that taxpayers received dividends on the shares is not controlling.

In Shubin v. Commissioner, 3 Cir., 67 F.2d 199, cited by the government, the full cash proceeds of the mortgage were received by the seller, who gave a bond guaranteeing the payment of the mortgage by the purchaser. The transaction was different in substance as well as in form from the transaction we are considering. In E. J. Gallagher Realty Co. v. Commissioner, 4 B.T.A. 219, the opinion stated that with respect to the $1,000 left on deposit with the Association, the Association "merely acts as a collecting agent for the taxpayer and it is paid to the taxpayer out of the first money received in settlement of the mortgage." This is not true in the instant case. We agree with the test stated in Hudson v. Commissioner, 11 T.C. 1042, 1050, affirmed per curiam 6 Cir., 183 F.2d 180, also relied on by the government, that to avoid accrual taxpayers "would have to prove that * * * some contingency or reasonable uncertainty about the ultimate payment was known to exist." There was such contingency and uncertainty in the instant case.

Since the right to receive the $2,000 did not become "fixed" in 1953, it was not income to taxpayers in that year. The deficiency assessment was not in accordance with law, and taxpayers are entitled to a refund. The judgment of the district court is reversed and the case is remanded for the entry of a proper judgment in accordance with this opinion.

Reversed.