In re ESTATE of Grace M. SCHARF, Deceased, Charles E. Scharf and Arthur A. Scharf, Co-Executors, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Arthur H. and Phyllis HAUBER, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Urban V. and Alice T. COMES, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 13890–13892.

United States Court of Appeals Seventh Circuit.

April 15, 1963.

Rehearing Denied in Nos. 13891–92 May 24, 1963.

Lawrence J. Hayes, St. Paul, Minn., James A. Dunkin, Chicago, Ill., for petitioners, Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Stephen Wolfberg, Lee A. Jackson, David O. Walter, Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

These three proceedings are before us on petitions by taxpayers for review of a decision of the Tax Court of the United States. It sustained the Commissioner's determination that there were deficiencies in each petitioners'[1] federal income tax for the taxable year 1953.[2] The tax court's opinion is reported at 38 T.C. 15 (1962). The three cases were consolidated for review in this court as they were for trial in the tax court.

The deficiency assessments arose from the Commissioner's disallowance of capital gain treatment of sums received by Grace M. Scharf, Arthur H. Hauber and Urban V. Comes in return for the sale of their individual memberships in Belmont Community Hospital Association (Belmont), an Illinois not for profit corporation.

Belmont was organized June 18, 1938 and took over the business and assets of Belmont Hospital, Inc., an Illinois business corporation which had operated Belmont Hospital since 1927.

---

1. Petitioners are estate of Grace M. Scharf, deceased, Charles E. Scharf and Arthur A. Scharf, co-executors, No. 13890; Arthur H. Hauber and Phyllis Hauber, husband and wife, No. 13891; and Urban V. Comes and Alice T. Comes, husband and wife, No. 13892. The wives of petitioners Hauber and Comes were joined due to the filing of joint returns.

2. With respect to petitioner estate of Grace M. Sharf, deceased, the tax court sustained the Commissioner's determination of an addition to tax. Such addition is not contested on this petition for review.

Belmont's charter provided that it was to own and operate a general hospital "not for pecuniary profit, but exclusively for charitable purposes * · * *." Belmont Hospital was to be maintained "as a charitable institution and not for pecuniary profit with a view toward conferring upon the public as much benefit as is consistent with the proper operation, management and control of said institution." Because of its exclusively charitable nature, Belmont was exempted from federal income tax, and a donation to it was deductible in computing the donor's income tax.

Belmont's by-laws provided that its memberships should be limited to five. These memberships were transferable but the prospective transferee was subject to the approval of Belmont's board of trustees. Upon a member's death, his membership passed to his personal representative, heirs or legatees but without any rights except that of transferring the membership to an approved applicant. The affairs of the corporation were managed by a board of trustees consisting of three regular members of Belmont.

Petitioners Hauber and Comes, both doctors, acquired their memberships at the time of Belmont's organization. Grace M. Scharf, whose estate has been substituted for her in the instant proceeding, acquired her membership in 1943 by transfer from Charles E. Scharf, her husband, shortly before his death. Charles E. Scharf was a doctor and one of the original members of Belmont. Mrs. Scharf was certified a regular member of Belmont in 1944.

From the time of its organization, petitioners Hauber and Comes served on Belmont's board of trustees and were in active control of its affairs until they transferred their memberships. For their services, they received compensation comparable to that of doctors in administrative capacities in other hospitals. During this period, Hauber and Comes continued their practice of medicine, enjoying the benefits of a hospital affiliation deemed to be important to a doctor's practice. Emergency patients who came to Belmont Hospital without a doctor were attended by Hauber and Comes along with the other doctors who held memberships in Belmont. Grace M. Scharf was not a doctor, was not elected to Belmont's board of trustees and never rendered any services for Belmont.

Sometime in the late 1940's Hauber and Comes considered retiring from their practice. A broker approached them and informed them he might be able to secure a purchaser for their memberships in Belmont. The broker handled the ensuing financial negotiations. Several proposals, including an offer of $300,000 which was rejected, were conveyed to all five of Belmont's members whose consent to sell was required by the prospective purchasers.

An agreement satisfactory to all five members was reached in 1953. An organization called Stewards Foundation agreed to purchase the five memberships for a gross sum of $710,000. All five members then entered into agreements with a lawyer under which he was empowered to sell each member's membership. As nominee for the five selling members, he entered into a final agreement of sale with Stewards Foundation on October 30, 1953.

The tax court found that in consummating the sale the attorney was nominee of all five members in the sale to Stewards and rejected the contention of the Commissioner and Grace M. Scharf that Mrs. Scharf had sold her membership to him as agent for Hauber and Comes.

On the date of sale, October 30, 1953, the old members met and effectively vested control of Belmont in Stewards Foundation by electing five new members. Also on this date the membership certificates and resignations of all the old members were delivered to Stewards Foundation.

As a result of the sale, Stanley F. Price and Robert R. Stibgen, the two members who are not parties to this proceeding, received $30,000 and $20,000, respectively. For the sale of her membership, Mrs. Scharf received $75,000, $25,000 of which came from the interest

of Hauber and Comes in the sale. Mrs. Scharf received the entire amount of $75,000 in 1953.

The share of Hauber and Comes in the proceeds of the sale was $256,666.66 each, which amount represented the balance of the total sales price less the payments to the other three members and the fees of the lawyer and the broker.

In their taxable year ending December 31, 1953, Hauber and Comes each received the sum of $60,166.67 by check from their nominee and an undivided fractional share of a $410,000 note to him, which represented the balance of the purchase price then owing by Stewards Foundation. The shares of Hauber and Comes in this note represented the balance of $196,500 owing to each of them.

The note was secured by a real estate mortgage by Belmont on its property in favor of Stewards Foundation which was assigned to the nominee. The amounts due under the note from Stewards Foundation were paid to such nominee in 1954 and 1955, who then distributed to Hauber and Comes the amounts to which they were entitled. Upon completion of the payments on the note, he reassigned the note and mortgage to Stewards Foundation.

It was stipulated that the monies received by the nominee in 1953 and distributed by him in the same year to Hauber, Comes and Mrs. Scharf "were the monies of the Stewards Foundation and not monies of" Belmont.

In her cash basis return for 1953, Mrs. Scharf reported the $75,000 received by her in 1953 as a long term capital gain on the sale of a capital asset with a zero basis. In their cash basis returns for 1953, Hauber and Comes reported only the sum of $60,166.67 which they each received in cash in 1953. This amount was reported as a long term capital gain on the sale of a capital asset having a zero basis.

In his notice of deficiency to Mrs. Scharf, the Commissioner stated that it had been determined that the $75,000 was ordinary income because it represented a distribution of Belmont's earnings or compensation for services rendered to Belmont.

In the case of Hauber and Comes, the Commissioner's notice stated that they had received ordinary income in 1953 in the amount of $256,666.66 each. As with Mrs. Scharf, the Commissioner stated that this amount represented distribution of corporate earnings or compensation for services.

By an amended answer filed before trial, the Commissioner asserted that the membership certificates did not constitute property and were therefore not capital assets.

The tax court sustained the Commissioner's deficiency assessments, holding that the amounts received from the transfer of the membership certificates in Belmont were not long term capital gains because the certificates were not property. With respect to Hauber and Comes, the tax court held that their beneficial interests in the note received by their nominee in 1953 were property with a fair market value of the face amount thereof and hence constituted a cash equivalent includible in the income of Hauber and Comes for the taxable year 1953.

Four judges of the tax court dissented from the court's holding that the membership certificates were not capital assets. These four nevertheless were of the opinion that the interests of Hauber and Comes in the $410,000 note represented a cash equivalent constituting a distribution of Belmont's earnings. These petitions for review followed.

All parties agree the amounts received from Stewards Foundation were taxable. The issue with which we are confronted is whether the amounts are entitled to privileged treatment as long term capital gains under Int.Rev.Code of 1939, § 117. This issue, in turn, hinges on whether the memberships in Belmont were capital assets within the contemplation of § 117. If the amounts received were not entitled to capital gain treatment, they are taxable as ordinary income under Int.Rev. Code of 1939, § 22(a).

Capital asset is defined as "property held by the taxpayer * * *" with certain exclusions which are not relevant to the instant case. Int.Rev.Code of 1939, § 117(a).

The tax court held the Belmont memberships were not property, but for us this is not the critical issue. For not everything which may be called property is a capital asset. E. g., Commissioner v. Gillette Motor Co., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617 (1960); Corn Products Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955). Further, the Supreme Court has stated: "Since this section [Int.Rev.Code of 1939, § 117] is an exception from the normal tax requirements of the Internal Revenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly." Corn Products Co. v. Commissioner, supra at 52, 76 S.Ct. at 24, 100 L.Ed. 29.

■ An analysis of the memberships before us in the instant case leads us to the conclusion that they are not capital assets within the meaning of § 117.

The memberships in Belmont, an "exclusively charitable," not for profit corporation, do not entitle members to a beneficial interest in either the capital or earnings of the corporation. The law of Illinois provides that a corporation not for profit is prohibited from paying any part of its income to its members. Ill. Rev.Stat. ch. 32, § 163a25 (1961). Upon dissolution, the assets of a corporation not for profit which are not held on condition requiring return are transferred to organizations engaged in activities similar to those of the dissolving corporation. Ill.Rev.Stat. ch. 32, § 163a44 (1961). Similarly, Belmont's charter states in two instances that the hospital is not to be operated for pecuniary profit.

Affirmatively, these memberships represented obligations to serve Belmont. As the tax court stated: "The clear import of the by-laws is that the certificates, insofar as they evidence membership in Belmont, granted a privilege to and imposed a responsibility upon the holders to serve a charitable institution."

The memberships did not represent an investment of capital. There is nothing in the record to show that Mrs. Scharf, her predecessor husband, Hauber or Comes invested any funds in order to acquire their memberships.

The memberships in question do not represent a beneficial interest in capital or earnings. They do not represent an investment of capital in the ordinary business corporate sense. They do represent obligations to serve the purposes of this charitable corporation. We cannot believe that in enacting the Internal Revenue Code Congress ever intended that memberships such as these should be considered capital assets. Accordingly, we hold that the amounts received for the transfer of the memberships are excluded from the preferential capital gains treatment accorded by Int.Rev. Code of 1939, § 117.

Furthermore, we can not escape the conclusion that the transaction involved in this case was a device used to permit the members to obtain the properties and assets of Belmont. It is more than coincidental that at the time of the transaction involved Belmont's net worth was slightly more than the $710,000 paid by Stewards Foundation. Whether viewed as a finding of fact, ultimate fact or legal conclusion, we agree with the following statement by the tax court:

"[T]he amount paid by Stewards was paid for the purpose of acquiring effective control of the properties and assets of Belmont. In substance what has occurred is as much a distribution of all or a substantial portion of the properties and assets of Belmont to the petitioners as if a direct sale of those properties had been made and the moneys distributed to petitioners."

This analysis of the transaction brings it within the scope of Int.Rev.Code of 1939, § 115(a) as a corporate distribution, and the amounts received are to be treated as dividends taxable as ordinary income.

Hauber and Comes contend the amounts in excess of those received by each of them in cash in 1953 are not includible in income for the year 1953. They argue that the transaction involved constituted a casual sale of personal property entitling the proceeds to be reported on an installment basis under Int. Rev.Code of 1939, § 44(a) and (b).[3] In addition, they contend that even if these amounts are not entitled to installment treatment under § 44(a) and (b), they did not receive the equivalent of cash with respect to these sums and therefore they were not includible in income for 1953.

In order to qualify for installment treatment, there must have been a sale or disposition of personal property. We need not define the exact nature of the memberships sold, for in our opinion there was no sale or disposition within the meaning of § 44(b). The plan with which we are concerned here, to acquire the assets of a charitable corporation, can not be said to have been within the contemplation of Congress when § 44 was enacted.

The tax court was correct in holding that Hauber and Comes received a cash equivalent with respect to their interests in the note given by Stewards Foundation in 1953. Throughout this entire transaction the nominee was the agent of Hauber and Comes. In accepting the note, he was acting as their agent and held the note for their benefit. No contention is made that the note had a fair market value other than its face amount. The tax court correctly held that the entire share of Hauber and Comes in the proceeds of the sale, $256,-

666.66 each, was includible in their income for the taxable year 1953. Barnsley v. Commissioner, 31 T.C. 1260 (1959).

Petitioner, estate of Scharf, contends the sale of Mrs. Scharf's membership was not to Stewards Foundation but to the nominee as agent for Hauber and Comes. The tax court found otherwise—that he was Mrs. Scharf's agent and that she sold her membership to Stewards Foundation—and such finding is not clearly erroneous. However, in view of our holding that the memberships were not capital assets this issue is moot. The sale would have resulted in ordinary income to Mrs. Scharf regardless of the identity of the purchaser.

Petitioners urge that the burden of proving that their memberships constituted property was erroneously placed on them because of the Commissioner's amendment to his answer immediately before trial in which he asserted for the first time that the memberships were not property. We agree with the tax court that the amendment was not the pleading of new matter which would shift the burden to the Commissioner; but in any event the argument has lost its force because of our holding that the transaction was a corporate distribution of earnings. This was one of the grounds stated by the Commissioner in his deficiency assessment for taxing the proceeds of the sale to Stewards Foundation as ordinary income. There is no dispute that on the corporate distribution issue petitioners had the burden of proof.

The lack of decisional precedent in this case is apparent. We draw no conclusions from this fact. We are content to hold as a matter of law that those who

---

3. Section 44 provides in pertinent part:

"(a) Dealers in personal property. Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

"(b) Sales of realty and casual sales of personalty. In the case (1) of a casual sale or other casual disposition of personal property * * * for a price exceeding $1,000, * * * if * * * the initial payments do not exceed 30 per centum of the selling price * * * the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. * * *"

seek to acquire for their own personal use and benefit the earnings of a charitable corporation, in the manner adopted by taxpayers in this case, may not claim preferential treatment under the Internal Revenue Code. As Judge Raum of the tax court said in his concurring opinion: "A contrary view would make sweet indeed the uses of charity."

We hold that the tax court reached a correct result in this case and the decisions under review must be affirmed.

Decisions affirmed.