H. F. CAMPBELL COMPANY (FORMERLY H. F. CAMPBELL CONSTRUCTION COMPANY), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT*

Docket No. 6010–64.   Filed December 23, 1969.

*Victor R. Wolder*, for the petitioner.
*John H. Menzel* and *Donald Berman*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioner's income tax as follows:

| Year | Income tax |
| --- | --- |
| 1960 | $42,808.49 |
| 1961 | 39,341.47 |
| 1962 | 4,421.56 |

Certain issues have been settled by the parties. The principal issue remaining for decision is whether for 1962 a change was made in petitioner's method of accounting within the meaning of section 481(a).[1] If the answer to this question is affirmative we must then decide whether the change was initiated by petitioner and whether adjustments necessary solely by reason of the change are required under section 481 to prevent amounts from being duplicated or omitted.

*See Supplemental Opinion filed May 18, 1970, 54 T.C.
[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

FINDINGS OF FACT

Petitioner, a Michigan corporation, maintained its principal office at 9301 Michigan Avenue, Detroit, Mich., at the time its petition was filed. For the calendar years 1960 through 1962 petitioner filed its Federal income tax returns with the district director of internal revenue at Detroit, Mich.

Petitioner has been engaged in the construction business as a general contractor for many years. Some of its construction contracts were completed in the same year in which they were obtained; others were completed in years subsequent to the year in which they had been obtained. Petitioner used a percentage-of-contract-completion method in accounting for its profit or loss from these contracts on its financial statements, but used a type of completed-contract method in reporting income from such contracts for Federal tax purposes.

During the years in question petitioner prepared job schedules for all jobs on which it had worked, and at the end of each year it prepared a yearend job schedule. Petitioner included in its income on its returns for each year only the gross profits from construction contracts designated on the yearend job schedule as having been completed at the close of that year.

From 1946 to April 5, 1954, petitioner's controller was Roy L. Holland, and the yearend job schedules for years prior to 1954 were prepared under his supervision. From November 19, 1954, to December 11, 1964, the controller was Stanley Prokop. Prior to 1954, for the purposes of its yearend job schedules, petitioner used October 15 as the date for determining when its jobs were completed. The sole criterion used in this determination was physical completion. Consequently, if a job was considered completed by that date, it was also considered completed for Federal tax purposes. This practice was based on the premise that 75 days was sufficient time in which to accumulate records on remaining costs which had not been entered in petitioner's books.

In preparing the yearend job schedules for 1954 and subsequent years, Prokop changed the cutoff date for determining completion from October 15 to December 31. He also increased the number of criteria to be used in determining the year in which profit or loss was to be reported for tax purposes to four: (1) Physical completion in the field, (2) acceptance by the customer, (3) recordation of all anticipated costs, and (4) computation of the final bill to be sent to the customer. The third factor (recordation of costs) was intended to delay reporting the income of a cost-plus contract until all subcontractors' claims had been received. The fourth factor (computation of the final bill) was designed to meet the problem of existence

of disputes between the customer and petitioner as to the value of extra work arising from modifications of the original job; after the job had been completed physically and had been accepted by the customer, the job would be kept open until an agreement was reached as to its cost and thus the final amount due was known.

On September 4, 1962, a revenue agent began an audit of petitioner's tax returns for 1960 and 1961. At the beginning of the audit Prokop informed the revenue agent that petitioner was on the completed-contract method of accounting. The revenue agent reviewed a list of the jobs reported as completed in 1961, as well as a schedule of jobs listed as incomplete on the last day of 1961, to determine whether all the jobs had been properly recorded and reported for income tax purposes. He then asked Prokop why certain jobs had been kept open and others had been closed; Prokop explained why he had kept specific jobs open, but the revenue agent did not explicitly inquire as to what general criteria petitioner used to determine whether a contract was completed. The agent never directed Prokop to change the method of accounting used in preparing the yearend job schedules and hence the income tax returns.

Subsequently, applying the criteria of physical completion and customer acceptance, the revenue agent tentatively concluded that the gross profits from five contracts which petitioner had kept open until 1962 should be reported as income for 1961. The contracts were as follows:

| Job No. | Name | Gross profit |
|---|---|---|
| 60013-1 | The Copps Co | $43,158.49 |
| 60038-1 | Anheuser Busch | 33,671.05 |
| 61007-1 | H. J. Heinz Co | 45,650.17 |
| 61010-1 | American Motors (Wisc.) | 23,381.32 |
| 61017-2 | United Parcel | 2,360.38 |
| | | 148,221.41 |

Petitioner began the Copps Co. job in 1960. The customer was billed for the entire contract price, and all of it except for $32,189.72 was paid by the customer, prior to the end of 1961. The customer took possession and moved into the building in February 1961, but by letter dated October 26, 1961, stated that the water heater had to be replaced and some caulking had to be done. Petitioner replaced the heater on December 4, 1961, and completed the caulking on December 26, 1961. Petitioner entered on its corporate books and records for 1962 additional costs of $583.79, which represented the expenses of replacing the defective water heater. Petitioner "back charged" this amount as of February 28, 1961, to the responsible subcontractor's account. However, the subcontractor contested this "back charge"

and never paid it, and consequently petitioner canceled the charge on December 31, 1962.

Petitioner commenced construction work on the Anheuser Busch contract in 1960, and the customer took possession during 1961. The customer paid the entire contract price during 1961, except for $858 which petitioner had billed in November 1961. The customer was dissatisfied with certain exhaust fans and chemical feeders and requested petitioner to correct the defects. The work was performed by a subcontractor in 1962, and petitioner entered additional costs in the amount of $637 on its books in 1962. When a waiver of a mechanic's lien from the subcontractor was received in 1962, the customer paid petitioner the $858.

The H. J. Heinz Co. job was begun by petitioner in 1961, and the customer took possession in the same year. A subcontractor filed a $2,489.62 claim for extras due to windstorm damage incurred in September 1961, and petitioner billed the customer for this extra at that time. Petitioner received final payment on the contract price in November 1961, and was paid in full for the extra work in January 1962.

Petitioner began work on the American Motors Co. contract in 1961, and the customer took possession in the same year. Petitioner billed the customer in full for the entire job by the end of October 1961, and the latter paid the entire contract price in 1961, except for a 10-percent retainer. On September 1, 1961, petitioned billed the customer an extra charge of $8,498 for changing the location of the building. The customer paid the retainer on January 5, 1962, and the extra charge on March 5, 1962. Petitioner entered on its books and records for 1962 a reduction of the sales price of $563.18 and additional costs of $500.17. Some of such additional costs were incurred by petitioner prior to 1962.

In 1961 the United Parcel job was begun, the customer took possession and moved in, and petitioner received final payment. Petitioner did not incur or enter on its books and records any additional costs during 1962.

On September 18, 1962, the revenue agent informed petitioner's accountant by telephone of various proposed adjustments with respect to petitioner's 1960 and 1961 income tax returns, including his conclusion that the gross profits from the above five contracts should be reported as income for 1961. He did not then discuss the basis for this conclusion. This call was followed on October 23 by a meeting held at petitioner's office, in which the revenue agent discussed with petitioner's accountant and attorney the proposed adjustments for 1960 and 1961. At this meeting the revenue agent indicated to them that his inclusion of the five contracts in 1961 was based upon application of only the

criteria of physical completion and customer acceptance. Petitioner's representatives requested that the revenue agent apply these two criteria to all of the 1961 contracts, but he refused to do so.

After this meeting petitioner's accountant examined its contract files and, by applying the above two criteria, also came to the conclusion that the five contracts were, in fact, completed in 1961; he so advised the revenue agent. Subsequently, on or about January 15, 1963, a second conference was held in petitioner's office, attended by petitioner's accountant and attorney and the revenue agent, but the positions of the parties did not change.

On March 5, 1963, respondent, by letter dated March 3, 1963, informed petitioner of the revenue agent's proposed adjustments (to which petitioner had not agreed), which would have increased petitioner's taxable income for 1960 and 1961. The adjustment for 1961 was explained as follows:

Taxpayer reported income on a completed contract method. The contracts which the taxpayer has designated as in process as of December 31, 1961, were analyzed and certain ones were determined to be completed in 1961. The gross profits should be included as 1961 income. Contracts are as follows:

| #60013 | The Copps Co | $43,158.49 |
|--------|--------------|------------|
| 60038 | Anheuser Busch | 33,671.05 |
| 61007 | H. J. Heinz Co | 45,650.17 |
| 61010 | American Motors Co | 23,381.32 |
| 61017 | United Parcel Service | 2,360.38 |
| | | 148,221.41 |

At about this time petitioner's accountant and bookkeeper met and reviewed all of the jobs in light of their conversations with the revenue agent and determined which of the jobs were completed solely upon the basis of physical completion and customer acceptance. On March 13, 1963, petitioner's accountant completed and signed its 1962 income tax return due on March 15, excluding the gross profits from the five contracts.

On July 12, 1963, respondent sent petitioner a 30-day letter, to which was attached a copy of the agent's report dated May 14, 1963, including the income from the five contracts in 1961. The 30-day letter, which stated that it was not a notice of deficiency, advised petitioner that if it did not accept the agent's findings it could file a protest and request a conference with the appellate division in the Regional Commissioner's Office, but that if no protest were filed a notice of deficiency would be issued. Petitioner filed a protest on August 9, 1963. Subsequently, three conferences were held between petitioner's representatives and a representative from the appellate division. At these conferences petitioner raised the question of the applicability of section 481 and again re-

quested that the agent apply the criteria of physical completion and acceptance to all of the contracts previously reported as completed in 1961.

Prior to October 7, 1963, the same revenue agent who had carried out the audit of petitioner's 1960 and 1961 income tax returns audited its 1962 return. In this audit the revenue agent examined petitioner's yearend job schedule for 1962 and its opening schedule for 1963. The revenue agent indicated to petitioner's representative that he would propose adjustments to some items on the 1962 return, but such adjustments did not relate in any manner to gross profits from completed contracts. Informal conference procedures were waived, and petitioner's 1962 return was transferred to the appellate division for consideration, along with the review of its 1960 and 1961 returns.

On December 4, 1963, the agent made a report of his audit of the 1962 return, and did not recommend any change or addition to the gross profits reported by petitioner from contract completions in 1962. On January 20, 1964, petitioner filed a protest to the agent's report for 1962, but did not raise any question or claim any adjustment with respect to the manner of reporting its gross profits from completed contracts in 1962.

On October 30, 1964, respondent issued a notice of deficiency, which did not make any adjustment to petitioner's gross income for 1961 based on gross profits from contract completions, as the revenue agent had proposed, but instead, among adjustments to petitioner's taxable income for 1962, increased "gross receipts" by $145,937.27, with the explanation:

It is determined that you realized income in the taxable year ended December 31, 1962, from five construction contracts in the total amount of $145,937.27 which you failed to report as income for income tax purposes. Accordingly, your taxable income for the year ended December 31, 1962, is increased in the amount of $145,937.27.

In May 1966 respondent had the same revenue agent examine petitioner's records for the years 1953 through 1962—another agent had previously examined the records for 1963—and prepare a report indicating how the gross profits listed on petitioner's yearend job schedules would be adjusted if the only criteria for determining when profit or loss from a contract should be reported were physical completion and customer acceptance. The agent found that use of these criteria would require that income included by petitioner in each of the years 1953 through 1961 be included in earlier years, that income from the five disputed contracts be included in 1961, and that no adjustments to income be made for 1963.

ULTIMATE FINDINGS OF FACT

The H. J. Heinz Co. and United Parcel contracts were completed in 1961; the Copps Co., Anheuser Busch, and American Motors Co. contracts were completed in 1962.

In computing its taxable income in its return for 1962, petitioner used a method of accounting for income from construction contracts different from the method used for prior years. This change of method was initiated by petitioner.

OPINION

The present controversy calls upon us to decide whether there was a change in petitioner's method of accounting in 1962 within the meaning of section 481(a)[2] and, if so, whether the change was initiated by petitioner and whether adjustments to petitioner's income are necessitated by the change. A brief review of the background of section 481 will provide the perspective for resolution of these issues.

Under the 1939 Code the regulations required the Commissioner's approval before a change of accounting method was effective. Sec. 39.41–2(c), Regs. 118. As a condition to approval, the Commissioner usually required the telescoping of all adjustments into the year of change. When the Commissioner initiated the change, the tax was determined by computing the corrected income as if the new method of accounting had been used only for the open years; the Treasury could not "assess a tax for a later year to make up for a credit erroneously allowed, or a change erroneously omitted, in an earlier year." *Commissioner* v. *Dwyer*, 203 F. 2d 522, 525 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court.

Section 481 was enacted in 1954. Its purpose was to prevent any income from escaping tax or being taxed twice solely because of a change in method of accounting.[3] As originally enacted, however, the

---

[2] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

[3] S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p 307 (1954), explained the general approach of the section as follows :

"If there is a change in the method of accounting employed in computing taxable income from the method employed for the preceding taxable year, adjustments must be made in order that every item of gross income or deduction is taken into account and that none are omitted. At the same time no item is to affect the computation of taxable income more than once. It is only those omissions or doubling ups which are due to the change in method which must be adjusted."

section applied only to adjustments applicable to 1954 Code years; what had gone untaxed to that point would not be taxed under the new provision, regardless of who initiated the change in accounting method. The opportunity for tax windfalls became immediately obvious. Fletcher, "Section 481: Changes in Accounting Methods," 18th Ann. N.Y.U. Tax Inst. 161 (1960). In 1958 Congress amended the section to provide that adjustments to pre-1954 Code years shall be made, but only if the adjustments are attributable to a change in method of accounting "initiated by the taxpayer." Technical Amendments Act of 1958, 72 Stat. 1606.[4]

To qualify for the coveted section 481 adjustments limited to 1954 Code years, therefore, petitioner must show that (1) its accounting method was changed, (2) it did not initiate the change, and (3) adjustments are necessary solely by reason of the change to prevent amounts from being duplicated or omitted. Petitioner has satisfied requirement (1), but its arguments founder on requirement (2); we do not reach (3).[5]

The parties have stipulated that for Federal income tax purposes, petitioner "reported its profit or loss from [its] contracts by using a type of completed contract method."[6] A fair evaluation of the evidence, we believe, shows that the type of the method used by the petitioner involved the application of four criteria to determine the year in which the income from each contract was to be reported: (1) Physical completion in the field, (2) acceptance by the customer, (3) recordation of all anticipated costs, and (4) computation of the final bill. Although petitioner may have made errors in applying these criteria, they were used by it from 1954 through 1961 to determine the time for reporting contract income. Its returns for those years were

---

[4] The legislative history of sec. 481 is reviewed in detail in *Hulond R. Ryan,* 42 T.C. 386 (1964); *Howard H. Perelman,* 41 T.C. 234, 240–241 (1963); and *Fred P. Pursell,* 38 T.C. 263, 269–273 (1962), affirmed per curiam 315 F. 2d 629 (C.A. 3, 1963).

[5] We note in passing that it is arguable, in view of the separateness of the accounts for individual contracts, see *Fort Pitt Bridge Works,* 24 B.T.A. 626, 641 (1931), affirmed on this issue 92 F.2d 825 (C.A. 3, 1937), certiorari denied 303 U.S. 659 (1938), that advancing the date for reporting the profit from the five disputed contracts would not, in and of itself, cause an "omission" or "duplication" of income in any year.

[6] The completed-contract method of accounting is authorized by sec. 1.451–3(b)(2), Income Tax Regs., as follows:

Sec. 1.451–3 *Long-term contracts.*

(b) *Methods.* Income from long-term contracts (as defined in paragraph (a) of this section), determined in a manner consistent with the nature and terms of the contract, may be included in gross income in accordance with one of the following methods, provided such method clearly reflects income:

\* \* \* \* \* \* \*

(2) *Completed contract method.* Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion.

examined by the Internal Revenue Service, and no question was ever raised as to the acceptability of these criteria.

For the purposes of section 481(a), as well as the complementary provisions of section 446, the term "method of accounting" includes the consistent treatment of a recurring, material item, whether that treatment be correct or incorrect. *Dearborn Gage Co.*, 48 T.C. 190 (1967); *Hulond R. Ryan*, 42 T.C. 386 (1964); *Fruehauf Trailer Co.*, 42 T.C. 83, 103 (1964), affd. 356 F. 2d 975 (C.A. 6, 1966), certiorari denied 385 U.S. 822 (1966); sec. 1.446–1(a)(1), Income Tax Regs. In view of the stipulation of the parties and the broad meaning given the term, we are compelled to conclude that use of the four criteria for timing the reporting of the profit or loss from long-term contracts constituted a method of accounting within the meaning of section 481(a).

The method of accounting used by petitioner in preparing its returns for 1954 through 1961 utilized all four criteria. The method used by it in filing its 1962 and 1963 returns employed only the first two criteria—physical completion and acceptance by the customer. This use of only two rather than the four criteria constitutes a change in accounting method; in the words of section 481(a)(1), the taxable income shown in petitioner's income tax return for 1962 was computed "under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed."

As to the initiation of the change, petitioner first argues that the regulation, sec. 1.451-3(b)(2), quoted in footnote 6 *supra*, requires the change—that it permits the use of only the two criteria of final completion and acceptance. Relying upon language in *Fruehauf Trailer Co.*, *supra* at 99, petitioner maintains that the deficiency notice is therefore erroneous and arbitrary in using all four criteria, notwithstanding that this was the method of accounting which petitioner had used in the preparation of its returns for 1954 through 1961. We disagree.

As this Court stated in *Wright Contracting Co.*, 36 T.C. 620, 636 (1961), affd. 316 F. 2d 249 (C.A. 5, 1963), certiorari denied 375 U.S. 879 (1963), the "question here is not whether the change would be proper." Section 446(b) gives respondent broad discretion to compute taxable income under any method of accounting (see sec. 446(c)) which, in his opinion, clearly reflects income. See *Lucas* v. *American Code Co.*, 280 U.S. 445 (1930); *Shepherd Construction Co.*, 51 T.C. 890, 898 (1969). On its merits we cannot say that respondent's computation in the deficiency notice of petitioner's income for 1962 under the same method petitioner had used in its eight prior returns was

arbitrary.[7] Applying the third and fourth criteria—recording of all anticipated costs and computing the final bill—merely had the effect of delaying the reporting of the income from a contract until contingent claims arising from it, by and against petitioner, had been settled. We agree that the regulation contemplates that all accrued income and expenses from a contract will be reported in the year in which it is finally completed and accepted, and that claims arising from the contract which do not accrue because they are contingent and uncertain are reported as adjustments for the year in which they are settled. *C. H. Leavell & Co.*, 53 T.C. 426 (1969), decided this day; *National Contracting Co.*, 37 B.T.A. 689, 701–702 (1938), affirmed on this issue 105 F. 2d 488 (C.A. 8, 1939); *Barham* v. *United States*, 256 F. 2d 456 (C.A. 4, 1958); 2 Mertens, Law of Federal Income Taxation, sec. 12. 134, and cases cited. But this does not mean that a type of completed-contract method used consistently over a period of time, which postpones the reporting of income until contingent claims are resolved, may not clearly reflect income. See *National Contracting Co., supra* at 701; *Rice, Barton & Fales, Inc.* v. *Commissioner*, 41 F. 2d 339 (C.A. 1, 1930); *Carolina Contracting Co.*, 32 B.T.A. 1171 (1935). We think respondent's discretion under section 446 is broad enough to permit him to employ such a method in the notice of deficiency and to hold petitioner to the method it had used in the preceding 8 years.

More pertinent, section 446(e)[8] lays down the rigid mandate that "Except as otherwise expressly provided in this chapter," a taxpayer must secure the consent of the Secretary or his delegate before changing his method of accounting. This rule applies regardless of the fact that the new method of accounting may be more correct than the old method. See *Commissioner* v. *O. Liquidating Corp.*, 292 F. 2d 225, 231 (C.A. 3, 1961), certorari denied 368 U.S. 898 (1961); sec. 1.446-1(e) (2), Income Tax Regs. Therefore, since petitioner does not claim to have applied for the Commissioner's approval of its change in accounting method, much less to have secured such approval, it can prevail only if section 481 is an express statutory exception to section 446(e).

---

[7] Our ultimate findings—that two of the disputed contracts were completed in 1961 and the other three in 1962—do not evidence any disagreement on our part with the method of accounting, i.e., use of the four criteria, utilized in the notice of deficiency. It merely reflects our conclusion that under that method, the H.J. Heinz Co. and United Parcel contracts were completed in 1961.

[8] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(e) REQUIREMENT RESPECTING CHANGE OF ACCOUNTING METHOD.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

Section 481 provides only a limited, conditional exception to section 446(e), i.e., where the Commissioner, not the taxpayer, initiates the change in method of accounting. However, we cannot agree with petitioner that the revenue agent "initiated" the change of accounting method reflected in petitioner's 1962 return, and that respondent then arbitrarily changed its method again in the notice of deficiency.[9]

As noted above, the adjustments under section 481, as amended, are not taken into account for any pre-1954 Code year "unless the adjustment is attributable to a change in method of accounting initiated by the taxpayer." The committee reports accompanying the 1958 amendment to the section explained that "A change in the taxpayer's method of accounting required by a revenue agent upon examination of the taxpayer's return would not * * * be considered as initiated by the taxpayer." H. Rept. No. 775, 85th Cong., 1st Sess., p. 20 (1957), 1958–3 C.B. 811, 830; S. Rept. No. 1983, 85th Cong., 2d Sess., p. 45 (1958), 1958–3 C.B. 922, 966. Section 1.481–1(c)(5), Income Tax Regs., is to the same effect, but refers to a change "required as a result of an examination," not merely to action by a revenue agent. Petitioner hinges his case on the phrase "required by a revenue agent." But, as we view the evidence, no change in petitioner's accounting method was "required" by anyone connected with the Internal Revenue Service.

The testimony is conflicting as to whether the revenue agent, in his conversations with petitioner's representatives, "required," "directed," or "instructed" a change in its method of accounting. The revenue agent insists that he merely informed petitioner's representatives that, under the regulation permitting the completed-contract method, he had concluded that the profit from the five disputed contracts should have been reported for 1961 rather than a later year. The revenue agent emphatically denies, truthfully we believe, that he ever gave petitioner's representatives any requirements, directions, or instructions of any kind as to returns subsequent to 1961. While petitioner's representatives may not now so remember their conversations with the revenue agent, we found his testimony credible.

Moreover, in the circumstances of this case, the triggering of a section 481 adjustment cannot be made to depend on the language used in oral communications between the revenue agent and petitioner's representatives about a tax audit which had not been closed. These conversations were purely interlocutory. Until the series of

---

[9] The mere fact that petitioner, at least ostensibly, changed its method of accounting in order more completely to conform with the regulation authorizing the completed-contract method does not prevent the change from being considered voluntary. Sec. 1.481–1 (c)(5), Income Tax Regs.

conferences on the audit had been concluded and the notice of deficiency issued, there was no finality about anything done by the revenue agent.[10] See *Biewer* v. *Commissioner*, 341 F. 2d 394 (C.A. 6, 1965), affirming 41 T.C. 191 (1963). Petitioner's representatives, an experienced accountant and an able tax attorney, are bound to have known this to be true. In addition to participating in the series of conferences, they filed numerous protests, all in evidence, urging that the revenue agent's recommendations be modified. True, they had immediately grasped the potential windfall advantages of a section 481 adjustment and had indicated a willingness to acquiesce in a change of accounting method if the change was applied to all of its contracts for all years back to 1953. But they knew full well the tentative character of all the revenue agent's recommendations. And, indeed, those recommendations were ultimately rejected by his superiors. This was their prerogative.

To state the facts of the cases on which petitioner relies is to show that they are distinguishable. In *Commissioner* v. *Welch*, 345 F. 2d 939 (C.A. 5, 1965), reversing a Memorandum Opinion of this Court, at the behest of a revenue agent the taxpayer signed waivers of restrictions on assessments, which obviated the necessity for a notice of deficiency; a deficiency was computed by using inventories and was assessed; and the revenue agent gave the taxpayer a memorandum specifying the amount to be treated as the opening inventory for the next tax year. Subsequently, in a deficiency notice covering the same and subsequent years, the Commissioner tried to undo all the revenue agent and his superiors had previously done. In *United States* v. *Linder*, 307 F. 2d 262 (C.A. 10, 1962), the District Court found that in an audit of a prior year, abandoned without the assertion of a deficiency, the revenue agent informed the taxpayers that the law *required* them to change their method of accounting, and the taxpayers followed those instructions.

*Decision will be entered under Rule 50.*

---

[10] The 30-day letter sent by respondent to petitioner on July 12, 1963—enclosing a copy of the agent's report and advising petitioner that if it did not accept the agent's findings it could file a protest and request a conference with the appellate division—likewise cannot be the basis for a finding that respondent initiated the change in accounting method. The letter stated that it was not a notice of deficiency, see, e.g., *Heinemann Chemical Co.* v. *Heiner*, 92 F. 2d 344 (C.A. 3, 1937), and added that if no protest were filed a notice of deficiency would issue. See sec. 601.105(d)(1), Proced. & Admin. Regs. It is well established that a 30-day letter does not give the taxpayer the right under sec. 6213(a) to petition the Tax Court for a redetermination of the deficiency, see, e.g., *Heinemann Chemical Co.* v. *Heiner, supra* at 346; *Estate of Charles Schmalstig*, 43 B.T.A. 433, 438 (1941), but merely reflects a step in the administrative procedure.